BECK ET AL. *v.* DICKINSON, EXECUTOR.

[No. 14,791.   Filed December 10, 1934.]

*Halleck & Halleck,* for appellants.

*Hanley & Hanley,* for appellee.

CURTIS, J.—This was an action brought in the trial court by Albert H. Dickinson, executor of the last will and testament of John Jordan, deceased, to construe items 4 and 5 of his will. The court found that the appellants Dewey D. Porter and Dora E. Beck take nothing by said will and rendered judgment accordingly. Each appellant filed a separate motion for a new trial, identical in legal effect, each of which was overruled. This appeal was then prayed and perfected. The error assigned and relied upon for reversal is the ruling of the court upon each of said motions. The causes or grounds of each motion are: (1) That the decision of the court is not sustained by sufficient evidence; (2) the decision of the court is contrary to law.

Items 4 and 5 of said will are as follows: "Item 4th. At the death of my wife Mary A. Jordan I bequeath and devise such real and personal property as may not have been used for her support, as follows, to wit: One fifth thereof to my brother William Jordan, the remaining four-fifths to the four children of my brother George H. Jordan, the children of my brother Mount E. Jordan, by his third wife, Mary A., the children Telitha C. Hunt and the three children of her deceased daughter Eliza-

beth, (said children of Elizabeth to have together one share) and the children of my sister Sarah J. Porter. If any of the children of my deceased brothers and sisters above named, to wit: George H., Mount E., (by his third wife) Telitha C., and Sarah J., be now dead leaving children surviving, they shall together take the share their parent would have taken if he or she had been alive at the death of my said wife." "Item 5th. If my brother William Jordan be dead at the date of the death of my said wife, then the whole of my estate then remaining shall be divided among the children of my brother William Jordan, of my brother George H. Jordan, the children of my brother Mount E. Jordan by his said third wife Mary A., the children of my sister Telitha C. Hunt, (including the three children of her daughter Elizabeth, who shall take one share), and the children of my sister Sarah J. Porter in equal share. If any of such nephews or nieces shall die before my wife, leaving children such children shall take the share their parent would have taken had he or she survived my said wife, but if any shall die before my wife leaving no children surviving, then the share of their brothers and sisters shall not be increased thereby but the whole estate shall be divided among the other beneficiaries as if they had never been."

The finding of the court as to the appellants is as follows: "And the court after hearing the evidence and being sufficiently advised in the premises finds that the defendants Dora E. Beck and Dewey D. Porter are the adopted children of Thomas Porter, deceased of Shenandoah, Iowa, and that Dora E. Beck was regularly adopted long after the execution of the will and Dewey D. Porter was adopted four months before the execution of the will, and that under the law they do not take under the will of John Jordan, deceased, probated

in this cause, they being grandnieces and grand-nephews by adoption, of the deceased."

The question presented to the trial court for decision was whether or not these appellants who are grand-niece and grandnephew respectively of the decedent by adoption by their adopting parents should take by vir-tue of the testator's will or be cut off by reason of the fact that they are adopted children only. The trial court construed the will adversely to them. There is no dis-pute but that they are adopted children only of a son of the testator's sister. By the decision of the trial court the property of the testator went to the nephews and nieces of the testator and to the children of the blood of such nephews and nieces who are deceased.

In the hearing to construe said will, evidence was heard by the trial court which conclusively establishes the following facts: That the testator died on the 4th day of February, 1931, having made his said will on the 19th day of October, 1900; that Thomas G. H. Porter and wife adopted the appellant Dewey D. Porter on June 14th, 1900 and adopted the other appellant Dora E. Porter (Beck) on July 4th, 1904; that said Thomas G. H. Porter was the nephew of the testator and died after the death of testator's wife; that the testator was informed that his said nephew and wife could have no natural children and that he advised them to adopt a boy and girl, knew of said adoptions and frequently during the early childhood of said adopted children made them presents. It is contended by the appellants that the above facts lead to no other conclusion than that the testator intended by his will that these adopted children of his nephew Thomas G. H. Porter should take the share of their adoptive parent the same as if they had been natural children. In this contention we believe the appellants are correct.

The trial court may have been guided in its decision

by the following language used in the case of *Casper* v. *Helvie et al.* (1925), 83 Ind. App. 166, 180 146 N. E. 123, to wit: "Where one makes provision for his own 'child or children' by that designation, it is quite proper that he should be held to have included an adopted child, . . . and it is the settled law in this state that, in such a case the word child will include adopted child, unless there is something in the will to show an intention to exclude an adopted child. But we hold that where a person makes provision in a will for a 'child or children' of some person other than the testator, an adopted child is not included unless other language in the will makes it clear that it was intended to be included." We feel that the above quoted portion of the opinion in the Casper case, *supra,* is incomplete and misleading and said language of said opinion is modified as hereinafter set forth in rule number 2 of this opinion.

A few simple rules to follow in the construction of a will need to be kept in mind in the decision of the instant case. They are set out in what will be referred to as number 1 and number 2 of this opinion as follows: 1st. The paramount rule is to ascertain the intention of the testator and to give it effect if not prohibited by law. There has never been a better statement of this rule than was made by Lord Abinger in the case of *Hiscocks* v. *Hiscocks* (1839), 5 M. & W. 363, 367 as follows: "The object in all cases is to discover the intention of the testator. The first and most obvious mode of doing this is to read his will as he has written it, and collect his intention from his words. But as his words refer to the facts and circumstances, respecting his property and his family, and others whom he names or describes in his will, it is evident that the meaning and application of his words cannot be ascertained, without evidence of all those

facts and circumstances. To understand the meaning of any writer, we must first be apprised of the persons and circumstances that are the subjects of his allusions or statements; and if these are not fully disclosed in his work, we must look for illustration to the history of the times in which he wrote, and to the works of contemporaneous authors. All the facts and circumstances, therefore, respecting persons or property, to which the will relates, are undoubtedly legitimate, and often necessary evidence, to enable us to understand the meaning and application of his words." In Greenleaf on Evidence, Sixteenth Edition pages 416 and 417 the author has this to say: "It is only in this mode that parol evidence is admissible (as is sometimes, but not very accurately, said) to explain written instruments; namely, by showing the situation of the party in all his relations to persons and things around him, or, as elsewhere expressed, by proof of the surrounding circumstances. Thus, if the language of the instrument is applicable to several persons, to several parcels of land, to several species of goods, to several monuments or boundaries, to several writings; or the terms be vague and general, or have divers meanings, as 'household furniture,' 'stock,' 'freight,' 'factory prices,' and the like; or in a will, the words 'child,' 'children,' 'grand-children,' 'son,' 'family,' or 'nearest relations,' are employed; in all these and the like cases, parol evidence is admissible of any extrinsic circumstances, tending to show what person or persons, or what things, were intended by the party, or to ascertain his meaning in any other respect; and this, without any infringement of the rule, which, as we have seen, only excludes parol evidence of other language, declaring his meaning, than that which is contained in the instrument itself." 2nd. When one makes provision for his own child or children in his will he will be deemed to have

included an adopted child or children unless there is something in the will, or something in the extraneous circumstances to rebut said presumption. Where one makes provision in his will for a child or children of some person other than himself he will be deemed not to have included an adopted child or children of such other person unless there is something in the will or something in the extraneous circumstances to rebut said presumption. The language of the Casper case, *supra,* above quoted is modified in accordance herewith as immediately above set out. The cases cited and reviewed in the Casper case, *supra,* with the possible exception of the Woodcock's appeal case (1907), 103 Me. 214, 68 Atl. 821, do not sustain the objectionable language of said Casper case but do sustain the language we use in the instant case. These rules are simple of statement and simple of application. The chief difficulty of the trial courts will lie in determining the admissability and weight of the evidence of such extraneous circumstances but it is not within the province of this opinion to discuss such questions. Trial courts will decide such questions as they arise under the well known rules of evidence for the construction of wills.

The trial court in the instant case properly heard evidence of such extraneous circumstances but we are lead to believe that it was misled and guided in its decision by the language of the Casper case, *supra,* above set out. When the paramount rule announced in number one of this opinion is applied to the facts of the instant case and interpreted in the light of the rules announced in number two of this opinion, only one conclusion can be reached, to wit: That it was the intention of the testator that these appellants should take under the will the same as if they had been natural grandniece and grandnephew respectively. The decision of the trial court is not sustained by sufficient

evidence and is contrary to law. The judgment is reversed and the trial court ordered to sustain the motion for a new trial. We can see no useful purpose in a retrial of the cause and the trial court is further directed to enter judgment for these appellants in accordance with this opinion.

Judgment reversed.