PEIRCE v. FARMERS STATE BANK OF VALPARAISO ET AL.

[No. 27,918.  Filed November 30, 1943.  Rehearing denied January 10, 1944.]

*Jay E. Darlington,* of Hammond, and *Harry P. Sharavsky,* of Gary, for appellant.

*Freund & Pillard,* of Valparaiso, for appellees.

SHAKE, J.—This is an action to construe the will of Charles S. Peirce, a widower, late of Porter County, Indiana. After making a number of small specific requests, not here involved, the will gives the residue

of the estate to the appellee, Farmers State Bank, in trust, with directions to pay the monthly income therefrom to the testator's son Joseph, or to use the same for his support, during his life. This is followed by Item 11, which directs that: "After the death of my son Joseph, providing he shall have survived me, the balance of my estate remaining in the hands of my Trustee, shall be distributed as follows: If my son Joseph shall have married and leave, surviving him, a child or children, then, and in that event, I will, devise and bequeath to such child or children, share and share alike, one half of such balance, . . ." The other half of the balance remaining in the hands of the trustee at the time of Joseph's death was devised to the testator's sisters, sisters-in-law, nieces, and nephews, with a proviso that "if my son Joseph shall die childless" the entire balance of the estate should be divided equally among the surviving devisees and legatees named in said item of the will. The action called for a judicial construction of the language quoted.

The following facts appear from the amended complaint, upon which the case was tried, and the undisputed evidence: The will was executed on August 29, 1930, and probated on October 29, 1930, the testator having died on October 24 of that year. The testator was survived by his son Joseph, who was 44 years of age and unmarried at the time of his father's death. Subsequently, on November 20, 1930, Joseph Peirce married Della Hubbell, a widow 48 years of age; and on December 20, 1933, he adopted the appellant who was then 25 years old and the son of his wife by a former marriage. Joseph Peirce died on November 24, 1936, survived only by his widow and said adopted son.

The action was prosecuted upon the theory that inasmuch as Joseph Peirce married and adopted the appellant as his son, the appellant is a surviving "child," within the meaning of Item 11 of the will here under consideration. The specific allegation of the amended complaint was that:

"Said testator in fact intended by his said will, and particularly by said item 11 thereof, to include adopted children of said Joseph in referring to 'a child or children' of said Joseph; and plaintiff as such adopted son of Joseph is in fact a 'child' of said Joseph within the actual meaning and intention of testator in said item 11."

The trial court held otherwise, and this appeal is from the overruling of appellant's motion for a new trial. The alleged errors are that the decision is contrary to law and that certain testimony offered by appellant was improperly excluded.

To establish his case, the appellant produced as a witness one D. Longshore who testified as follows: "I recall being present sometime in July, 1930, in the Peirce home when Mr. Peirce, Sr., and Joe and myself were present. That was over the week-end, and I was over there for dinner. I had dinner that evening with Joe and his father, and this took place in the living quarters of Mr. Peirce. It was in the kitchen dinette where we had our dinner. He (testator) asked Joe to come home and stay with him; to get married and settle down and have children. Joe says: 'That is a little late. I am sterile anyway and couldn't have any children.' When Joe made that statement Mr. Peirce said: 'You are going with Della (Hubbell) and marry her. She has a fine boy, and adopt him.' He said: 'You can carry on my name.' Joe said: 'That is exactly what I want to do.' He said: 'If all right with her, I will do it.' "

Another witness testified on behalf of the appellant, that Joseph Peirce was intemperate in his habits and given to excessive drinking, all of which was well known to his father; that the father had a strong affection for his son and was concerned and worried about him, and wished him to live at home, rather than in Chicago where he had been for several years, except for week-end visits; that a short time before the will was written, the witness had a conversation with the testator upon the subject of a will, and the testator said that Joseph had been going exclusively with Della Hubbell for some time and might marry her. There was also evidence that the testator had known Della Hubbell since she was a child and that she was a frequent visitor in his home; that Joseph was a peculiar sort of a person, not regarded as entirely competent, though in some respects he was smart enough; that there was a strong taint of insanity in the family; that Joseph stammered and walked with a shuffling gait; and that he died in a sanitarium for chronic alcoholics and mental cases.

The evidence, summarized above, was practically undisputed, except to the extent that it may have been affected by the credibility of the witnesses. See *McKee* v. *Mutual Life Insurance Co.*, No. 27,913, this day decided, *ante* p. 10, 51 N. E. (2d) 474. From these facts the appellant would have us deduce that when Charles S. Peirce wrote his will he knew that his son Joseph planned to marry Della Hubbell; that Joseph was sterile and that, in the nature of things, Della was probably barren on account of age; that the testator desired and expected that after marrying Della, Joseph would adopt her son, the appellant; and that the word "child," as used in Item 11 of the will, therefore, had

reference to the appellant, as the prospective adopted son of Joseph.

The sole purpose of the court in construing a will is to ascertain the intention of the testator[1] as the same appears from a full and complete consideration of the entire instrument,[2] when read in the light of the surrounding circumstances[3] as they existed when the will was made.[4] 2 Page on Wills (3rd Ed.), §§ 918, 919, 920.

The language used in the instrument will first be considered and it will be presumed, on the outset, that the words employed therein were intended to have the settled meaning which the law attaches to them. *Taylor* v. *Stephens* (1905), 165 Ind. 200, 74 N. E. 980; *Smith* v. *Smith* (1915), 59 Ind. App. 169, 109 N. E. 60.

The rule is that when one makes provision in his will for a child or children of some person other than himself, he will be presumed not to have included an adopted child or children of such other person, unless there is something in the will or in the extraneous circumstances to rebut that presumption. *Nickerson* v. *Hoover* (1919), 70 Ind. App. 343, 115 N. E. 588; *Casper* v. *Helvie* (1925), 83 Ind. App. 166, 146 N. E. 123; *Beck* v. *Dickinson* (1934), 99 Ind. App. 463, 192 N. E. 899. Admitting the application of

[1] *Hutchinson's Estate* v. *Arnt, Admx.* (1936), 210 Ind. 509, 1 N. E. (2d) 585, 4 N. E. (2d) 202, 108 A. L. R. 530.

[2] *Grise, Admr.* v. *Weiss, Admr.* (1937), 213 Ind. 3, 11 N. E. (2d) 146.

[3] *Major* v. *Major* (1938), 106 Ind. App. 90, 15 N. E. (2d) 754.

[4] *Brookover* v. *Branyan* (1916), 185 Ind. 1, 112 N. E. 769; *Stieglitz* v. *Migatz* (1914), 182 Ind. 549, 105 N. E. 465.

the principle just stated, counsel for the appellant say in their brief: "The burden is on us to show something in the will, or something in the extrinsic circumstances to indicate that an adopted child was meant." We have already quoted all of the pertinent provisions of the will, and there is nothing whatever in that instrument to rebut the presumption that the testator did not intend that the provisions for the child or children of his son Joseph should include the latter's adopted child. If there is any basis for the appellant's contention it must, therefore, be found in the evidence relating to the extraneous circumstances and the law applicable thereto.

The will before us is not of itself ambiguous in respect as to whether the appellant is a beneficiary. In the absence of competent evidence to the contrary, it would necessarily be concluded that the appellant has no interest in the decedent's estate. This leads to an inquiry as to whether proof of extraneous circumstances may be received to vary the terms of an unambiguous will. The best reason why this may not be done is that to permit it would be to substitute an oral will for one that is required to be in writing. See 4 Page on Wills (3rd Ed.) § 1627, where it is said: "Accordingly, where the language of a will has a definite meaning, as interpreted by the rules of construction, and applies, without ambiguity, to the beneficiary and property in existence, extrinsic evidence is not admissible to attempt to show that it does not express the testator's true intent."

The case of *Yates' Estate* (1924), 281 Pa. 178, 126 A. 254, is in point on facts strikingly similar to those here involved. The will divided the estate into four parts, three of which were devised to the testator's

brothers and sisters absolutely, or for life, with the remainder to their surviving child or children and the issue of those that might be deceased. The fourth share was devised to the executors in trust, with direction to pay the net income thereto unto the decedent's sister Helen M. Foulke, "so long as she shall live . . . and immediately upon the death of my said sister, . . . to pay, transfer and set over the principal of said share, together with any accrued income, *to such child or children as my said sister, . . . may leave her surviving.*" (Our Italics.)

The facts are further stated in the opinion as follows:

"Helen, the life tenant, died without ever having had any child born to her; but leaving a girl, whom she, Helen, had adopted by a deed executed and recorded long before the date of testator's will. The testimony disclosed that the child lived with her adopting mother, was known to decedent, and spoken of by him, as the daughter of his sister Helen, and so treated by him and the rest of the family. The evidence does not show, however, that the testator ever said that he had given or intended to give the adopted daughter any interest in his estate, and the will does not refer to her in any way."

In stating the question to be determined, the court said: "Where there is a gift by a third party to one for life, with remainder to her child or children, does the latter provision include an adopted child, in the absence of anything in the will to show testator so intended?"

The gist of the opinion is as follows:

"Of course, it is the intention of the testator which is to be carried into effect, and where the will shows it was his purpose that an adopted child

should share under a general gift to children, it must be so construed; but it must so appear from the will itself and not extrinsically, where the will is silent on the subject and is not doubtful in meaning: . . . It is also true, as appellant further claims, that we must put ourselves in testator's place in order to determine what he meant by his will . . ., but, when we have reached that coign of vantage, we must still declare the meaning of the language used, and not some other possible but undisclosed purpose: . . . Were this not so, verbal wills might become quite common, despite the requirement of the Wills Act.

"Assuming that testator knew that his sister was too old to have progeny, as appellant so strongly urges upon us, the contention that he must have meant the word 'child' to refer to appellant, is still without weight; for the gift is to 'such child or children as my said sister, Helen M. Foulke, may leave her surviving,' etc., etc., and no satisfactory explanation can be given of his use of the word 'children' in that connection, if, knowing his sister could bear none, he meant the word 'child' to refer to the one she had adopted."

The fallacy in the appellant's theory is that the extraneous circumstances upon which he relies are not calculated to supply deficiencies in an ambiguous will, but rather to change the legal effect of a will that is unambiguous. In the light of the proper rule of law and the controlling precedents, we must hold that he is not entitled to prevail.

The case of *Beck* v. *Dickinson, supra,* upon which the appellant leans heavily, affords no support to his view. That case correctly states the abstract rules of law, but we cannot approve their application to the facts disclosed by the opinion. There was before the court an unambiguous will, by which the testator devised property to his nephews and nieces upon the condition that if any of them should die before the

death of his wife, "leaving children such children shall take the share their parent would have taken had he or she survived my said wife." A nephew died before the death of the widow, survived only by two adopted children. The opinion recites, "that the testator was informed that his said nephew and wife could have no natural children and that he advised them to adopt a boy and girl, knew of said adoptions and frequently during the early childhood of said adopted children made them presents." The Appellate Court held that this evidence was sufficient to force a construction to the effect that it was the intention of the testator that the adopted children should take under the will "the same as if they had been natural grandniece and grandnephew respectively." A judgment against the adopted children was reversed and the trial court was directed to enter a judgment in their favor. We think this constituted an erroneous application of the law.

What has been said is a sufficient answer to all questions presented by this appeal.

The judgment is affirmed.

NOTE.—Reported in 51 N. E. (2d) 480.