In the Matter of the ESTATE OF John A. WALTERS, Deceased.

Bette BOLIN and Charles E. Lucas, Appellants,

v.

William F. WALTERS, Executor of The Last Will and Testament of John A. Walters, Deceased, Appellee.

No. 55A01–8708–CV–201.

Court of Appeals of Indiana, First District.

March 8, 1988.

Bruce N. Munson, Shirey & Edwards, Muncie, for appellants.

Peter L. Obremskey, Carol A. Sparks, Parr, Richey, Obremskey & Morton, Lebanon, for appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Bette Bolin (Bolin) and Charles E. Lucas (Lucas) appeal a decision of the Morgan Circuit Court construing the Last Will and Testament of John A. Walters, deceased (Testator).

We affirm.

## STATEMENT OF THE FACTS

The facts are not disputed. Decedent died testate on November 5, 1985, leaving two children, William F. Walters (William) and Rose Jeanne Steckler (Rose), as his natural heirs-at-law. His second and subsequent childless wife of some years, Jessie E. Walters (Jessie) predeceased him, but was survived by her two children by a prior marriage, Bolin and Lucas. His Last Will and Testament, bearing the date of September 29, 1979, was admitted to probate. Omitting the beginning declarations, instructions concerning debts, and the appointment of an executor, which provision has no bearing on the issue here, the remaining portions of the will, consisting of Items II and III, read as follows:

### ITEM II

I hereby give, devise and bequeath to my beloved wife, JESSIE E. WALTERS, a life estate in the following described real estate:

[Description omitted.]

At the termination of the life estate in JESSIE E. WALTERS, I hereby give, devise and bequeath said real estate, equally, and in fee simple, to WILLIAM F. WALTERS and ROSE JEANNE STECKLER, per stirpes.

### ITEM III

I hereby give, devise and bequeath all of the rest, balance and residue of my property, of every kind and character, real, personal and mixed, of whatsoever nature and wheresoever situated, *to my beloved wife, JESSIE E. WALTERS, per stirpes.* It is my wish and desire that there will not be a public auction of my personal property. (Emphasis added.)

The dispute here concerns Item III. Bolin and Lucas claim that the addition of the words per stirpes after Jessie's name created in them a substitutional bequest in the event that Jessie predeceased the Testator. William and Rose claim that the words per stirpes added nothing to the bequest and therefore, when Jessie predeceased the Testator the bequest lapsed. The trial court held that Item III was ambiguous wherein it says "... to my beloved wife, Jessie E. Walters, per stirpes," because there was no designation of a class that was to take by representation. The trial court concluded that the term per stirpes had no real meaning or legal effect and that Item III lapsed pursuant to IND.

CODE 29–1–6–1(g)(1). The correctness of that ruling is the sole issue on appeal.

### DISCUSSION AND DECISION

As was stated in *Wisler v. McCormack* (1980), Ind.App., 406 N.E.2d 361, the interpretation, construction, or legal effect of a will is a question to be determined by the court as a matter of law. An ambiguity must exist before the court is permitted to construe the will. In the absence of an ambiguity, the express language of the will should be enforced. *In re Estate of Spanley* (1984), Ind.App., 458 N.E.2d 289; *Franklin College v. Wolford* (1948), 118 Ind.App. 401, 78 N.E.2d 35. The court is limited to the language within the four corners of the will as a source for determining the testator's intent. *Estate of Spanley, supra.* A court should strive to give effect to every provision, clause, term, or word if possible. *Diaz v. Duncan* (1980), Ind.App., 406 N.E.2d 991. The court should always endeavor, if possible, to discover the intent of the testator and give effect thereto. *Donahue v. Watson* (1980), Ind.App., 411 N.E.2d 741. The court must determine what is meant by the will and must declare the meaning of the language used and not some possible, but undisclosed, purpose. *Peirce v. Farmers State Bank of Valparaiso* (1943), 222 Ind. 116, 51 N.E.2d 480.

2A G. Henry, *Probate Law and Practice* at 600 (7th ed. 1978) defines the terms per stirpes and per capita as follows:

> Where one dies intestate, who if he had lived would be entitled to an estate by inheritance as heir of one, or at least as descendant, who has died intestate, his children or their descendants, will ordinarily be entitled to take his share of such inheritance by descent as his representatives. As such representatives they will be entitled to take just as much as their principal would have taken and no more. This is taking property per stirpes, or by the right of representation; all the branches of each stirpes or root taking the share of the inheritance which the root they represent would have taken. The term per stirpes, or according to

the root, is used in distinction from taking per capita, or where each descendant takes the share of the inheritance in his own right as next of kin of the intestate. *Black's Law Dictionary* 1292, 1294 (4th ed. 1968), also defines the terms per stirpes and per capita. Per stirpes means literally by roots or stocks; by representation. It denotes that method of dividing an intestate estate where a class or group of distributees take the share which their ancestor would have been entitled to, taking it by their right of representing such ancestor, and not as so many individuals, or as the expression is used, per capita.

These concepts remain viable, appearing in the statutes governing descent and distribution. Subsection (c)(1) of IND.CODE 29–1–2–1 states that if issue of the intestate are of the same degree of kinship, they shall take equally, but if they are of unequal degree then the more remote degrees shall take by representation. Subsection (c)(4) provides that where issue of brothers and sisters are the persons entitled to take, then they shall take equally if they are of the same degree of kinship, but if they are of unequal degree, the more remote degrees shall take by representation.

Essentially, Bolin and Lucas argue that the term per stirpes, as used in Item III, can refer to no one but the heirs of Jessie. They argue that to interpret per stirpes as an adverb describing how Jessie Walters is to take the residue of the estate is contrary to both logic and the rules of construction. Therefore, it must refer to the class of persons who are to take by representation. They further bolster their argument by pointing out that the same term was used in Item II wherein the children of the Testator were made remaindermen.

Bolin and Lucas rely principally upon *Richland Trust Co. v. Becvar* (1975), 44 Ohio St.2d 219, 339 N.E.2d 830. They also cite *In re Estate of Evans* (1985), Mont., 704 P.2d 35, and *Johnson v. Swann* (1956), 211 Md. 207, 126 A.2d 603. *Becvar* involved a bequest to a designated beneficiary followed by the term per stirpes. Also in the will were a number of special bequests to named individuals wherein it

was specifically provided that if that beneficiary predeceased the testator the bequest would lapse. The bequest in dispute contained no such language. The court held:

> Where the testatrix intended a gift to lapse, she specifically so provided. See Items II–V, and VII–XI. Comparison of the bequest to Louise in Item III with the gift in Item XIII is particularly revealing. In Item III the gift to Louise lapses if Louise does not survive the testatrix, but no similar lapse is expressed in the Item XIII residuary gift to Louise. In fact, none of the seven bequests of the residuary estate in Item XIII are intended to lapse if the primary gift could not be made. In each instance there was a secondary gift in the event that the primary taker or takers predeceased the testatrix. Where she intended that the secondary gift go to the issue of the primary takers, she so stated. In the gifts to Olive B. Becvar and Margaret Koning, as well as the gift to Louise Hummel, a secondary gift to the heirs of the named person was clearly intended. In the absence of an express designation of the class of secondary takers, the class will be assumed to be the heirs at law of the named person, as determined by the statutes of descent and distribution.

44 Ohio St.2d at 224–25, 339 N.E.2d at 834.

In *Evans* the testator was survived by two daughters, one having six children and the other having two children. His will gave each daughter a specific bequest. After naming all eight grandchildren, he gave the residue of the estate to them in equal shares, per stirpes and not per capita. The court held that the grandchildren took equally and not by representation through their mothers. The court stated that the term per stirpes does not refer to the living ancestor. Persons who take per stirpes do so in a representative capacity, standing in the place of the deceased ancestor. They take only that which the ancestor would have taken if he had lived. The term applies to the substituted legatees in case of the death of the primary legatee.

In *Johnson* there was a bequest to a wife for life with a remainder over to the testator's named children to share and share alike, per stirpes and not per capita. The court held that the phrase per stirpes and not per capita had no meaning with regard to the named beneficiaries. It is not applicable to a named legatee or legatees designated as a class but is used with respect to substitutional gifts to substituted legatees in the case of the death of the primary legatee.

We perceive that the term per stirpes and its companion, per capita, have application only to the mode of distribution of a bequest among a designated class. The terms have no function in the establishment of the class who shall take. We disagree with *Becvar* to the extent that it holds that the phrase per stirpes used alone can create a class. The question here then, is what purpose did the Testator intend by the use of the term per stirpes in both Item II and Item III. We are of the opinion that its use was merely a legalistic flourish, devoid of any expression of intent. In Item II the testator carefully created an estate in Jessie for life with the remainder over to William and Rose equally. Thus, the mode of distribution was fixed by the word equally, and the addition of the phrase per stirpes was superfluous. Even if the Testator had intended to provide for remote descendants by representation, or per stirpes, the law would effect that result. It is evident that in Item II the Testator carefully and directly provided for the intended result. In Item III the will gave all of the residue of the estate to Jessie, absolutely and without limitation or condition. No attempt was made in Item III to create any substitutional bequest, or a future estate, even though the Testator had demonstrated his ability to do so by plain words in Item II. In both items he merely added the mischievous words per stirpes.

In *Johnson* and *Evans* the court rejected any application of the words per stirpes attached to the end of a bequest which was otherwise clear. In *Becvar* the court did not hold that the use of the phrase per stirpes by itself created a class, but, after

examining the will as a whole, seemed primarily impressed by directions in the will that certain bequests would lapse upon the prior death of the designated beneficiary. However, the bequest in dispute here did not contain such directions.

The argument that the use of the term per stirpes created a class composed of Bolin and Lucas, calls for mere speculation. There is nothing in the will to indicate that the Testator intended to disinherit his own children in favor of stepchildren. A more natural inference and a more probable construction exists that the Testator intended to provide a home for his widow during her lifetime in Item II, and to provide her with means in Item III which she could use, and would use, in her lifetime without restriction. Should such provision become unnecessary by reason of her prior death, the property would revert to his children.

■ This calls into play the rule of construction that heirs are not to be disinherited by conjecture, but where the intent of the testator remains in doubt, a construction should be used which considers the natural impulses of people and disposes of the property in the same manner the law would, had the decedent died intestate. *Brown v. Union Trust Co. of Greensburg* (1951), 229 Ind. 404, 98 N.E.2d 901; *Hutchinson's Estate v. Arnt* (1936), 210 Ind. 509, 1 N.E.2d 585; *McAvoy v. Sammons* (1967), 140 Ind.App. 552, 224 N.E.2d 323; *Runyan v. Rivers* (1934), 99 Ind.App. 680, 192 N.E. 327; *Hancock v. Maynard* (1920), 72 Ind. App. 661, 126 N.E. 451.

In conclusion, we repeat that had the Testator intended to disinherit his own children in favor of stepchildren, as to the residuary estate, he would have done so in comprehensible language which he had demonstrated his ability to use.

For the above reasons, this cause is affirmed.

Judgment affirmed.

MILLER, P.J., and ROBERTSON, J., concur.