Sarah LUTZ, Appellant–Respondent,

v.

Russell FORTUNE, III, and William L. Elder, Trustees, Appellees–Petitioners,

and

William L. Fortune, Anne Elder Schermerhorn, William L. Elder, II, Russell Fortune, III, Carter M. Fortune, Sheila M. Fortune, Peter Fortune, and Cathryn Reynolds Fortune, Respondents–Appellees.

No. 49A04–0012–CV–545.

Court of Appeals of Indiana.

Nov. 15, 2001.

Stanley C. Fickle, Michael Rosiello, Barnes & Thornburg, Indianapolis, IN, Jonathan R. Bell, Gerard E. Harper, Paul Weiss Rifkind Wharton & Garrison, New York, NY, Attorneys for Appellant.

Robert K. Stanley, Scott D. Himsel, Baker & Daniels, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

On September 14, 2000, the trial court ("Probate Court") entered summary judgment in favor of Appellees William L. Fortune, Anne Elder Schermerhorn, William L. Elder, II, Russell Fortune, III, Carter M. Fortune, Sheila M. Fortune, Peter Fortune, and Cathryn Reynolds Fortune, all beneficiaries to a trust created by William Fortune ("Fortune Trust"). The Probate Court ruled that Appellant Sarah L. Lutz ("Sarah") was not a beneficiary to the Fortune Trust. We affirm.

### Issues

The following issues are dispositive of the parties' contentions on appeal:

I. Whether Sarah was an intended beneficiary of the Fortune Trust;

II. Whether the "stranger-to-the-adoption" rule violates the Privileges and Immunities Clause of Article I, section 23 of the Indiana Constitution; and

III. Whether damages should be assessed against Sarah for bringing a frivolous or bad-faith appeal.

## Facts and Procedural History

This litigation stems from the Last Will and Testament of William Fortune ("Fortune"). Fortune was born in 1863 and died in 1942, and his Will was created in 1939. Specifically at issue here is the creation of the trust in Item Seven of Fortune's Will, hereinafter referred to as the Fortune Trust, which reads as follows:

### ITEM SEVEN.

After the payment of the debts and taxes provided for in Item One hereof and the payment and satisfaction of the specific legacies and bequests provided for in Items Two to Five hereof I hereby will, devise and bequeath to my son, Russell Fortune, and my daughters, Evelyn Fortune Bartlett and. Madeline Fortune Elder as co-trustees, all the rest, residue and remainder of my property, real, personal and mixed of whatsoever kind or character, wheresoever situated and whether now owned by me or hereafter acquired IN TRUST NEVERTHELESS for the uses and purposes and subject to the restrictions and limitations hereafter set forth in this Will.

. . . .

(Appellant's Appendix, Tab 1). Item Seven, Article V further provided as follows:

Title to said trust estate shall vest in the person or persons then entitled to receive my said trust property upon the death of the last survivor of the following named persons: My son, Russell Fortune, my daughter, Evelyn Fortune Bartlett, and my daughter Madeline Fortune Elder, provided that at the death of the last survivor of my son and daughters above named the youngest of my grandchildren, viz: Russell Fortune, Jr., William L. Fortune, Robert Fortune, Evelyn Lilly, Anne Elder, and William L. Elder, II, then living, shall have attained the age of twenty-one years.

(Appellant's App., Tab 1). Article VI(g) of Item Seven addressed distribution of the Fortune Trust upon its termination:

Upon the termination of this trust said trust estate shall be divided and I hereby will, devise and bequeath the same to my grandchildren, Russell Fortune, Jr., William L. Fortune, Robert Fortune, Evelyn Lilly, Anne Elder, and William L. Elder, II, per capita and not per stirpes. In the event any one of my said grandchildren should die prior to the termination of this trust leaving a child or children, . . ., then such child or children . . . shall take per stirpes that portion of said trust estate which his or her ancestor would have taken had he or she survived, but in the event any one of my said grandchildren should die prior to the termination of said trust leaving no child or children and no descendants of a deceased child or children him or her surviving, then he or she shall take no part of said trust estate, and the survivors of my said grandchildren, including per stirpes the issue of any who may be dead, shall among them take the entire trust estate.

(Appellant's App., Tab 1). On July 1, 1997, Fortune's last surviving child, Evelyn Fortune Bartlett, died at the age of 109. The Fortune Trust thereby terminated.

Fortune's grandchildren, William L. Fortune, William L. Elder, II, and Anne Elder Schermerhorn survived termination of the Fortune Trust. Grandchildren Robert Fortune, Russell Fortune, Jr., and Evelyn Lilly Lutz ("Evie") died prior to the termination of the Fortune Trust. Peter Fortune and Cathryn Reynolds Fortune are Robert Fortune's surviving children. Russell Fortune, III, Carter M. Fortune and Sheila M. Fortune are the surviving children of Russell Fortune, Jr. Evie did not bear any children prior to her

death in 1970. However, in 1968, Evie and her husband Herbert Lutz ("Whitey") adopted Whitey's granddaughter, Appellant Sarah Lutz ("Sarah"). Sarah is the daughter of Christopher Lutz, Whitey's son from a previous marriage.

On September 19, 1997, Russell Fortune III and William L. Elder II, as trustees, filed a verified petition to distribute the Fortune Trust with the Probate Court. Within this petition, the trustees sought a ruling from the Probate Court that Sarah was not a beneficiary under the Fortune Trust. Sarah's responsive pleading alleged that she was Evie's adopted daughter and surviving child, and therefore a beneficiary under the Fortune Trust.

On July 18, 2000, Sarah moved for partial summary judgment. Sarah argued that she was not barred from status as a remainder beneficiary of the Fortune Trust. The probate court found the issues raised to be dispositive, and entered the following summary judgment order against Sarah:

1. Settlor, William Fortune, executed his testamentary trust on August, 10, 1939, and he passed away on January 28, 1942.

2. . . . .

3. Evelyn Lilly Lutz ... was a granddaughter of settlor.

4. Sarah L. Lutz was born on February 17, 1967.

5. In February, 1968, Sarah L. Lutz was adopted by her grandfather, Herbert Barr Lutz, and his wife, Evelyn Lilly Lutz.

6. Evelyn Lilly Lutz was not related by blood to Sarah L. Lutz.

7. Evelyn Lilly Lutz passed away in 1970.

8. The trust terminated on July 1, 1997.

9. The rule set out in *Peirce v. Farmers State Bank of Valparaiso* (1943), 222 Ind. 116, 51 N.E.2d 480, was in effect at the time of Mr. Fortune's death and remains in effect.

10. The rule set out in *Peirce* does not violate the Indiana Constitution.

11. The adoption of Sarah L. Lutz by Evelyn Lilly Lutz did not cause Sarah L. Lutz to become a beneficiary of the trust.

12. For purposes of this order, the court is disregarding all allegations and all evidence regarding waiver, disclaimer, fraud, invalidity of the adoption, motives for the adoption, custody of the adopted child and/or re-adoption.

13. There is no genuine issue as to any material fact.

14. The plaintiffs are entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED that:

1. Sarah L. Lutz is not a beneficiary of the William Fortune testamentary trust.

2. Co-trustees shall wind up the trust and make final distribution of the trust and make final distribution of the trust assets in a manner consistent with this order.

3. There being no remaining issues in this proceeding and no just reason for delay, this order shall be entered in the Record of Judgments and Orders as a final judgment.

(Appellant's App., Tab 2).

This appeal followed.

**Discussion and Decision**

*I. Determining Beneficiaries*

Sarah contends that she is a beneficiary of the Fortune Trust. Specifically, Sarah alleges that the trial court erred when it relied on the "stranger-to-the-adoption"

rule to determine her beneficiary status. We disagree.

### Standard of Review

 A trial court's grant of summary judgment is clothed with a presumption of validity on appeal, and the appellant bears the burden of demonstrating that the trial court erred. *Crossno v. State*, 726 N.E.2d 375, 378 (Ind.Ct.App.2000). Nevertheless, the record must be carefully scrutinized to ensure that the plaintiff was not improperly denied a day in court. *Id.* Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Indiana Trial Rule 56(C). Should the record disclose an incorrect application of the law to the facts, we must reverse a grant of summary judgment. *In Re Estate of Weitzman*, 724 N.E.2d 1120, 1122 (Ind.Ct.App.2000).

### Rule of Law—"Stranger-to-the-Adoption"

 The interpretation, construction or legal effect of a will is a question to be determined by the court as a matter of law. *Hershberger v. Luzader*, 654 N.E.2d 841, 842 (Ind.Ct.App.1995). When construing the language of a will, our primary focus is on the intent of the testator. *Id.* In determining the testator's intent, we look to the four corners of the will and the language used in the instrument. *Id.*

 Moreover, a will must be construed with regard to the law and statutes in effect at the time of the testator's death. *In the Matter of the Estate of Spanley*, 458 N.E.2d 289, 290 (Ind.Ct.App.1984). Prior to Fortune's death on January 28, 1942, caselaw pertaining to adopted children as beneficiaries read as follows:

> When one makes provision for his own child or children in his will he will be

deemed to have included an adopted child or children unless there is something in the will, or something in the extraneous circumstances to rebut said presumption. Where one makes provision in his will for a child or children of some person other than himself he will be deemed not to have included an adopted child or children of such other person unless there is something in the will or something in the extraneous circumstances to rebut said presumption.

*Beck v. Dickinson*, 99 Ind.App. 463, 192 N.E. 899, 901 (1934). Caselaw after Fortune's death retained the "stranger-to-the-adoption" rule of *Beck*.

> The rule is that when one makes provision in his will for a child or children of some person other than himself, he will be presumed not to have included an adopted child or children of such other person, unless there is something in the will or in the extraneous circumstances to rebut that presumption.

*Peirce v. Farmers State Bank of Valparaiso*, 222 Ind. 116, 51 N.E.2d 480, 482 (1943).

However, Sarah argues that the *Beck/Peirce* caselaw does not control and that we should consider the adoption statutes of 1941 ("1941 Adoption Act"), which she argues marked a change in Indiana's public policy away from the "stranger-to-the-adoption" rule. More specifically, Sarah complains that the Probate Court's reliance on *Peirce* is misplaced because the testator in *Peirce* died in 1930, therefore the *Peirce* court would not have considered the 1941 Adoption Act, which included the following language:

> From and after such adoption such child shall take the name prayed for in the adoption petition, if new name is given, and thereafter shall be entitled to and receive all rights and interests in the

estate of such adopting father or mother or both. . . .

Burns § 3–121 (Supp.1943).

After such adoption such adopting father or mother or both shall occupy the same position toward such child that he, she or they would occupy if the natural father or mother or both. . . .

Burns § 3–122 (Supp.1943). Sarah's reliance on the language contained in the 1941 Adoption Act is misplaced. While the 1941 Adoption Act made substantial advances in placing adopted children in a family status equal to that of a natural child of the adopting parents, it did not address differences in *testamentary* inheritance rights. The 1941 Adoption Act addressed intestate succession and not the interpretation of testamentary instruments.

Moreover, with regard to intestate inheritance rights, the language in the 1941 Act did not change substantially from earlier statutory language.[1] In 1947, this Court continued to strictly interpret the language contained in the 1941 Adoption Act. In applying the 1941 Adoption Act, this Court concluded as follows:

We think section 3–121 of the 1941 Adoption Act is clear and unambiguous. It specifically limits to the estate of the adopting father and mother the right of an adopted child to inherit as such.

. . . .

We think the trial court correctly held that an adopted child does not inherit directly from the collateral kin of the adopting parents.

*Jacobs v. Schulmeyer*, 117 Ind.App. 275, 70 N.E.2d 435, 435 (1947). This Court found that the 1941 Adoption Act contained certain limitations and did not place adopted children on a purely equal footing with the natural child of the adopting parents for inheritance purposes: "[t]he statute gives to the adopted child certain rights, and imposes on the adopting parents certain obligations, but it does not make it the legitimate child and issue of the adopting parents, or a child born to them." *Blackford v. Barnhill,* 119 Ind.App. 257, 84 N.E.2d 64, 66 (1949). Contrary to Sarah's assertion, the 1941 Adoption Act did not affect the "stranger-to-the-adoption" rule contained in *Peirce;* and therefore, this rule remains applicable to the interpretation of Fortune's Will.

It was not until 1953 legislation that our General Assembly made changes to the "stranger-to-the-adoption" rule. Provisions in the 1953 Probate Code specifically addressed an adopted child's testate and intestate inheritance rights. The 1953 Probate Code provided that "[f]or the purpose of inheritance to, through and from a child legally adopted during his minority, such child shall be treated the same as if he were the natural child of his adopting parents." Burns § 6–208 (1953) (codified and amended at IND.CODE § 29–1–2–8). More importantly, the 1953 Probate Code also provided instruction on the construction of wills with regard to adopted children. The 1953 Probate Code instructed that "[i]n construing a will making a devise to a person or persons described by rela-

---

**1.** The older adoption statutes included the following similar language:

[F]rom and after the adoption of such child it shall take the name in which it is adopted and be entitled to and receive all the rights and interests in the estate of such adopting father or mother, by descent or otherwise, that such child would if the natural heir of such adopting father or mother.

Burns § 3–103 (1933).

After the adoption of such child, such adopted father or mother shall occupy the same position towards such child that he or she would if the natural father or mother, . . .

Burns § 3–104 (1933).

tionship to the testator or to another, any person adopted prior to the person's twenty-first birthday before the death of the testator shall be considered the child of the adopting parents." Burns § 6–601(d) (1953) (codified at IND.CODE § 29–1–6–1(d)). In 1953, the Indiana General Assembly specifically addressed the inheritance rights of adopted children and changed the "stranger-to-the-adoption" rule. The adoption provisions contained in the 1953 Probate Code ~~confirm~~ [further support] our conclusion that the 1941 Adoption Act did not abolish the "stranger-to-the-adoption" rule and that the rule applies to the interpretation of Fortune's Will.

### Analysis

■ The Fortune Trust, as detailed in Article VI(g) of Item Seven of Fortune's Will states in pertinent part that "in the event any one of my said grandchildren should die prior to the termination of said trust leaving no child or children and no descendants of a deceased child or children him or her surviving, then he or she shall take no part of said trust estate. . . ." This language is clear and unambiguous.

The Fortune Trust terminated upon the death of Fortune's last surviving child, daughter Evelyn Fortune Bartlett, who died on July 1, 1997. Evie, Evelyn Fortune Bartlett's daughter, and one of Fortune's six grandchildren, died in 1970, predeceasing her mother and the corresponding termination of the Fortune Trust by twenty-seven years. Evie did not bear children during her lifetime. However, Evie, and her husband Whitey, had adopted Sarah in February of 1968, which raises the issue before this Court today; namely, whether Fortune intended to in-

clude adopted children by his use of the terms "child" or "children" in his Last Will and Testament.

At the time of Fortune's death in 1942, the rule of law was that "[w]here one makes provision in his will for a child or children of some person other than himself he will be deemed not to have included an adopted child or children of such other person unless there is something in the will or something in the extraneous circumstances to rebut said presumption." *Beck,* 192 N.E. at 901. Here, Fortune made provision for great-grandchildren, in the event that a grandchild pre-deceased the termination of the Trust. There is nothing in Fortune's Will or in extraneous circumstances that would rebut the presumption that Fortune intended to exclude adopted children. Accordingly, the Probate Court did not err by applying the rule of law announced in *Peirce v. Farmers State Bank of Valparaiso* and ruling that Sarah was not a beneficiary of the Fortune Trust.[2]

### II. The Privileges and Immunities Clause of the Indiana Constitution

■ Additionally, Sarah argues that even if the "stranger-to-the-adoption" rule is the applicable rule of law, it nonetheless should not be applied because it violates the Privileges and Immunities Clause of Article I, section 23 of the Indiana Constitution, which provides as follows:

> The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.

**2.** This Court need not further address Sarah's arguments that an application of modern common law or present day statutes would result in Sarah being included as a remainder beneficiary because of the applicable rule of law which was in place at the time of Fortune's death; namely, the "stranger-to-the-adoption" rule.

Specifically, Sarah contends that our Privileges and Immunities Clause was violated as a result of the disparate treatment of her as an adoptee under the "stranger-to-the-adoption" rule.

In order to invoke the Privileges and Immunities Clause a "state action" must be at issue. *See, e.g., Indiana High School Athletic Ass'n, Inc. v. Carlberg,* 694 N.E.2d 222, 229 (Ind.1997) (determining *first* that decisions made by the Indiana High School Athletic Association with respect to student athletes constituted "state action" *before* addressing whether there had been a violation of the Equal Protection and the Privileges and Immunities Clauses of our federal and state constitutions). Sarah argues that the Probate Court's application of the rule in *Peirce* "is only the State applying a State-created rule of construction that would exclude an adopted child" and as such constitutes a "state action." Reply Brief at 28. We disagree.

The principal case relied on by Sarah is *MacCallum v. Seymour,* 165 Vt. 452, 686 A.2d 935 (1996). In *MacCallum,* the Supreme Court of Vermont held that a Vermont statute which denied an adopted person's right to inherit from her collateral kin, violated the "common benefits" provision of the Vermont Constitution (a provision akin to our Privileges and Immunities Clause). In reaching this holding, *MacCallum* applied the reasoning of *Trimble v. Gordon,* 430 U.S. 762, 775 n. 16, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), which reads in part as follows:

> Even if one assumed that a majority of the citizens of the State preferred to discriminate against their illegitimate children, the sentiment hardly would be unanimous. With respect to any individual, the argument of knowledge and ap-

proval of the state law is sheer fiction. The issue therefore becomes where the burden of inertia in writing a will is to fall. At least when the disadvantaged group has been a frequent target of discrimination, as illegitimates have, we doubt that a State constitutionally may place the burden on that group by invoking the theory of "presumed intent."

However, the Vermont Supreme Court and the U.S. Supreme Court addressed descent and distribution laws that prevent illegitimate children from taking property by *intestate* succession. This Court cannot reach the constitutionality of any similarly questionable Indiana statute, as we are not faced with an issue of *intestate* succession, but rather a question of *testate* succession, and as such are not confronted with a legislatively created rule of law or "state action." Moreover, unlike the intestate cases relied upon by Sarah, here it may be reasonably presumed that Fortune, with the assistance of an attorney, drafted his Last Will and Testament with knowledge of the "stranger-to-the-adoption" rule of construction. In short, Fortune's intent to exclude adoptees such as Sarah amongst his beneficiaries may be inferred from his knowledge of the applicable law of his time. Simply because this Court is charged with the interpretation of Fortune's Will does not invoke the Privileges and Immunities Clause of Article I, section 23 of the Indiana Constitution.

### III. Request for Appellate Damages

Lastly, we address Appellees' request for appellate attorney fees. Appellees argue that Sarah brought a frivolous, bad-faith appeal. More specifically, Appellees complain that Sarah's contention that the "stranger-to-the-adoption" rule was not the applicable rule of law to be applied to the Fortune Trust was brought in bad

faith and was frivolous. We disagree.[3]

*Rule of Law*

 The Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution.

Ind.Appellate Rule 66 E. Such an award is discretionary, and may be ordered when an appeal is replete with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purposeful. *Outcalt v. Wardlaw,* 750 N.E.2d 859, 864 (Ind.Ct.App.2001). However, appellate damages imposed for lack of merit should be applied only when the appellant's contentions and arguments are utterly devoid of all plausibility. *Kuehl v. Hoyle,* 746 N.E.2d 104, 110 (Ind. Ct.App.2001).

*Analysis*

 Here, Sarah presents an argument with citations to caselaw, statutes, and secondary sources of law that may be variously interpreted and applied. The unpersuasive effect of her arguments on appeal is not enough to categorize them as wholly without merit or utterly devoid of all plausibility. Accordingly, "we do not find the arguments raised by [Sarah] rise to a level that compel us to award fees." *See id.* Sarah's counter-claim that Appellees' decision to seek damages merits an award of appellate fees is similarly unavailing.

**Conclusion**

The Probate Court did not err by determining that the "stranger-to-the-adoption" rule was the applicable rule of law to de-

cide whether Sarah was a beneficiary under the Fortune Trust. Moreover, within the context of determining *testamentary* intent the probating of Fortune's Will did not involve "state action[,]" and therefore did not invoke the protections of the Privileges and Immunities Clause of the Indiana Constitution. Finally, the manner and merit of the arguments presented on appeal do not warrant appellate damages.

Affirmed.

BROOK, J., and VAIDIK, J., concur.

---

**3.** This Court declines the invitation to further consider appellate damages within the context of the validity of Sarah's adoption, an issue not considered by the Probate Court in reaching ·its summary judgment order. *See* Probate Court's Summary Judgment Order at Appellant's App., Tab 2.