[Cite as *State v. Sanderbeck*, 2013-Ohio-3718.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| CRYSTAL SANDERBECK | : | Case No. 2013CA00060 |
| | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Stark County Court
                                  of Common Pleas, Case No. 2012-
                                  CR-1755(B)



JUDGMENT:                         Affirmed



DATE OF JUDGMENT:                 August 26, 2013



APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN D. FERRERO                           STEVEN A. REISCH
Prosecuting Attorney                      201 Cleveland Avenue S.W.
                                          Suite 104
BY: RENEE M. WATSON                       Canton, OH 44702
Assistant Prosecuting Attorney
110 Central Plaza South, Suite 510
Canton, OH 44702-1413

*Baldwin, J.*

{¶1}    Defendant-appellant Crystal Sanderbeck appeals from the March 25, 2013 Judgment Entry of the Stark County Court of Common Pleas ordering her to pay restitution in the amount of $50,400.00 . Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}    On December 17, 2012, the Stark County Grand Jury indicted appellant on one count of grand theft in violation of R.C. 2913.02(A)(1), a felony of the fourth degree. The Bill of Particulars alleged that appellant and her co-defendant had invited themselves over to the victim's house for a cookout, had helped themselves to thousands of dollars of jewelry in the victim's house after distracting him and then had proceeded to attempt to pawn the same. The original police report listed seven (7) items stolen.  At her arraignment on January 11, 2013, appellant entered a plea of not guilty to the charge contained in the indictment.

{¶3}    Thereafter, on February 11, 2013, appellant withdrew her former not guilty plea and pleaded guilty to the charge in the indictment.  A restitution and sentencing hearing was held on March 18, 2013.

{¶4}    At the hearing, Joseph Wilgus testified that on August 6, 2012, there was a theft of jewelry from his home. He testified that he had kept track of the jewelry that he had purchased over the years and that he obtained appraisals for the jewelry that was taken. Wilgus testified that the appraisers were familiar with the jewelry because he had purchased it from them and they had records of his purchases.  The appraisals were admitted as exhibits and added up to over $200,000.00. The appraisals included the items listed in the police report as well as other items that Wilgus later claimed were

taken but that were not listed in the police report. He further testified that appellant's step-father found some of the jewelry at appellant's home and returned it to him. He stated that while two stones were recovered, they were not in the same condition as they were before they were taken and that they were damaged.

{¶5} On cross-examination, Wilgus testified that he knew Richard Corns, appellant's step-father. When asked, he testified that he had no insurance on any of the jewelry which belonged to a trust, and that the trust had no insurance. He also testified that he had never contacted his homeowner's insurer, State Farm, regarding what portion his policy with State Farm would cover. Wilgus denied telling Corns that had had committed insurance fraud on a regular basis when he had his business repairing trucks.

{¶6} Richard Corns testified that Wilgus was his neighbor and that he had known him for approximately seven years. Corns testified that he had completely remodeled Wilgus's house approximately four years earlier and that Wilgus had told him that he defrauded insurance companies while running his business. Corns further testified that he suspected that Wilgus had damaged his own home in order to have the remodeling covered by insurance, but he could not say for sure how the damage to Wilgus's house occurred. Corns testified that the damage to Wilgus's house could have been caused by the weight of snow. Corns also testified that he had returned three loose stones to Wilgus after finding them at appellant's residence.

{¶7} As memorialized in a Judgment Entry filed on March 25, 2012, the trial court placed appellant on three years of community control and ordered her to pay

restitution to the Wilgus Family Trust in the amount of $50,400.00, jointly and severally with her co-defendant.

{¶8} Appellant now raises the following assignment of error on appeal:

{¶9} THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING THE APPELLANT TO PAY RESTITUTION IN THE AMOUNT OF $50,400.00.

I

{¶10} Appellant, in her sole assignment of error, argues that the trial court erred in ordering her to pay restitution in the amount of $50,400.00. This figure represented the value of the items that were listed on the police report as stolen, minus the value of the items that were recovered.

{¶11} R.C. 2929.18 governs financial sanctions. Subsection (A)(1) states the following:

{¶12} "(A) Except as otherwise provided in this division and in addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section or, in the circumstances specified in section 2929.32 of the Revised Code, may impose upon the offender a fine in accordance with that section. Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

{¶13} "(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the

victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender."

{¶14}   Economic loss is defined in R.C. 2929.01(L) as follows:

{¶15}   "'Economic loss' means any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense and includes any loss of income due to lost time at work because of any injury caused to the victim, and any property loss, medical cost, or funeral expense incurred as a result of the commission of the offense. 'Economic loss' does not include non-economic loss or any punitive or exemplary damages."

{¶16}   The amount of restitution "must be supported by competent, credible evidence in the record from which the court can discern the amount of the restitution to a reasonable degree of certainty." *State v. Aliane,* 10th Dist. No. 03AP–840, 2004–Ohio–3730, ¶ 14. Restitution orders are reviewed under an abuse of discretion

standard. *State v. Williams,* 34 Ohio App.3d 33, 519 N.E.2d 1270 (2nd Dist. 1986). "[T]he court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information." R.C. 2929.18(A)(1). A trial court abuses its discretion if it orders restitution in an amount that does not bear a reasonable relationship to the actual loss suffered. *Williams,* syllabus. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶17} Appellant, in her brief, argues, in part, that Wilgus was not credible. Appellant notes that he requested restitution for items that he did not include in his report to the police and that he claimed that the recovered items were damaged, but no estimate of the loss in their value was presented. Appellant also points out that Wilgus claimed to have no insurance coverage even though he had more than $200,000.00 worth of jewelry in his home, that he never contacted his homeowner's insurer regarding the theft, and that Corns testified that Wilgus had told him that he had committed insurance fraud in the past.

{¶18} However, we note that the credibility of the witnesses is matter for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E. 2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159. We cannot say that the trial court, as trier of fact, lost its way in finding Wilgus to be credible.

{¶19}   Appellant also takes issue with the appraisals that were admitted in this case.  According to appellant, "[i]n each of these documents, the appraiser states that he examined the listed items after they were stolen."  However, at the hearing, Wilgus testified that the appraisers were familiar with the stolen jewelry because he had purchased the jewelry from them and they had kept records of his purchases.

{¶20}   Finally, while appellant argues that appellee failed to establish that Wilgus was, in fact, the trustee for the Wilgus Family Trust or that there even is a family trust, the trial court, in its Judgment Entry, did not order appellant to pay restitution to Wilgus himself. Rather, the trial court ordered that appellant pay restitution to the Wilgus Family Trust.

{¶21}   We find that the trial court did not abuse its discretion in ordering appellant to pay restitution in the amount of $50,400.00. The trial court's decision was not arbitrary, unconscionable or unreasonable.

{¶22}   Appellant's sole assignment of error is, therefore, overruled.

{¶23}   Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Wise, J. concur.

_____
HON. CRAIG R. BALDWIN


_____
HON. W. SCOTT GWIN


_____
HON. JOHN W. WISE


CRB/dr

[Cite as *State v. Sanderbeck*, 2013-Ohio-3718.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff - Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| CRYSTAL SANDERBECK | : | |
| | : | |
| Defendant - Appellant | : | CASE NO. 2013CA00060 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. Costs assessed to appellant.

_____
HON. CRAIG R. BALDWIN


_____
HON. W. SCOTT GWIN


_____
HON. JOHN W. WISE