**Bonnie E. Taggart PALOUTZIAN and Linda M. Taggart, Appellants–Respondents,**

v.

**Gregory A. TAGGART and Belle Delint–Eaglesfield, Appellees–Petitioners.**

No. 49A02–0908–CV–817.

Court of Appeals of Indiana.

Aug. 13, 2010.

John A. Cremer, Cremer & Cremer, Indianapolis, IN, Attorney for Appellants.

Michael P. Bishop, Jeffrey A. Adams, Cohen Garelick & Glazier, P.C., John F. Ittenbach, Ittenbach Johnson Trettin & Koeller, Indianapolis, IN, Attorneys for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Bonnie E. (Taggart) Paloutzian and Linda M. Taggart, natural children of Henry G. Taggart, appeal the trial court's order that Gregory A. Taggart and Belle Delint–Eaglesfield, adopted children of Henry G. Taggart, are beneficiaries under their grandfather Alex L. Taggart Jr.'s 1953

trust. Alex Taggart executed his trust when the stranger to the adoption rule was in effect. The stranger to the adoption rule provides that when one makes provision in his will for a child or children of some person other than himself, he will be presumed not to have included an adopted child or children of such other person, unless there is something in the will or extraneous circumstances to rebut that presumption. In this issue of first impression, we hold that a 2003 amendment to the Trust Code, Indiana Code section 30–4–2.1–2, which abrogated the stranger to the adoption rule and placed adopted children on equal footing with natural children, applies retroactively to the trust in this case pursuant to Indiana Code section 30–4–1–4. This is because to retroactively apply the amendment neither adversely affects a right given to any beneficiary nor gives a right to any beneficiary which he or she was not intended to have when the trust was created. We therefore affirm the trial court.

### Facts and Procedural History[1]

Alex L. Taggart Jr. ("Taggart") executed an irrevocable inter vivos Trust Agreement ("Trust") on November 27, 1953. JPMorgan Chase Bank, N.A.,[2] is the trustee. When Taggart executed the Trust in 1953, his son, Henry G. Taggart ("Henry"), was not married and did not have any children. Under the terms of the Trust, "[T]he entire income from the Trust Estate shall be for the use and benefit of Henry G. Taggart ... for and during his lifetime...." Appellants' App. p. 13. But upon Henry's death, the Trust provided for the following distribution:

2. Upon the death of the said Henry G. Taggart the principal and any undistributed income of the Trust Estate shall be distributed as follows:

    a. In the event the said Henry G. Taggart shall leave a widow surviving him and any children surviving, one-third (1/3) thereof shall be distributed to said widow and the remainder of the Trust Estate shall be divided equally among the surviving children of the said Henry G. Taggart.

*Id.* at 14. Hence, according to this section and others, the distribution was to be per capita and not per stirpes, meaning that Henry's children must have survived him in order to take from the Trust. *See id.* at 14–16 (subsections (a)–(d)). The Trust also provided that Taggart "expressly surrenders all right to make any change in the beneficiary of the trust with respect to either income or principal." *Id.* at 13.

On January 1, 1954, which was a little more than one month after Taggart executed the Trust, a statute abrogating the stranger to the adoption rule as it applies to wills (but not inter vivos trusts) went into effect.

Also after the Trust was executed, Henry married. On March 31, 1959, Henry adopted Gregory A. Taggart and Maria Taggart, now known as Belle Delint–Eaglesfield (collectively "the adopted children"), while they were minors. Henry then divorced and had three natural children, Linda M. Taggart, Bonnie E. (Taggart) Paloutzian, and Brenda L. Taggart, by another marriage.[3] Taggart died on

---

1. We heard oral argument in this case on June 14, 2010, in the Court of Appeals courtroom. We thank the attorneys for their excellent presentations, which have greatly aided us in the resolution of this challenging issue of first impression.

2. JPMorgan Chase Bank is the successor to The Indiana National Bank of Indianapolis, the original trustee.

3. The natural children's attorney stated at oral argument that the three natural children were born between the years 1959–1972.

December 13, 1972. Henry later died on September 11, 2008. Henry was survived by his widow, two adopted children, and three natural children.

In December 2008 JPMorgan Chase Bank ("Trustee") filed a petition in Marion Superior Court, Probate Division, requesting instructions on how to interpret the Trust. The Trustee filed the petition pursuant to Indiana Code section 30–4–3–18(a) ("If there is reasonable doubt with respect to any matter relating to the administration of the trust, the trustee is entitled to be instructed by the court."). Specifically, the Trustee cited the stranger to the adoption rule, which provides that " 'when one makes provision in his will for a child or children of some person other than himself, he will be presumed not to have included an adopted child or children of such other person, unless there is something in the will or in the extraneous circumstances to rebut that presumption.' " *Lutz v. Fortune,* 758 N.E.2d 77, 81 (Ind.Ct.App.2001) (quoting *Peirce v. Farmers State Bank of Valparaiso,* 222 Ind. 116, 51 N.E.2d 480, 482 (1943)), *trans. dismissed.* The Trustee noted that although this rule was in existence when Taggart executed the Trust in 1953, the Trust Code was amended in 2003 to place adopted children on equal footing with natural children when construing a trust as long as the children were adopted before the age of twenty-one and the settlor's death. In addition, the Trustee noted there is a retroactivity provision in the Trust Code providing that the 2003 amendment shall apply to trusts executed before September 2, 1971, unless an exception is met. Noting that Indiana's appellate courts have yet to address the retroactivity of the 2003 amendment to trusts, the Trustee sought "the Court's instruction concerning whether Henry's adopted son and daughter should be in-

cluded in the class of 'the surviving children of the said Henry G. Taggart' under the terms of the Trust." Appellants' App. p. 10.

The trial court held a hearing on the matter. At the hearing, counsel for adopted child Belle attempted to introduce into evidence an affidavit from Henry in which he discussed his father Taggart's intent. Tr. p. 35–38. The court took the matter under advisement but later ruled that the affidavit was inadmissible.[4] Appellants' App. p. 7 (paragraph 15). Following the hearing, the trial court entered an order concluding that the Trust included the adopted children. The order provides, in pertinent part:

10. I.C. 29–1–6–1(d) [which applies to wills] took effect on January 1, 1954, shortly after this trust was executed and basically reversed the "Stranger to Adoption" rule for children adopted while minors.

11. Rules of construction for interpreting wills may be used to aid the interpretation of inter vivos trust provisions but do not control.

12. Public policy will not allow this Court to presume the settlor used the language of this trust to intentionally exclude adopted children.

13. There is nothing in the trust document itself that shows the settlor intended to exclude adopted children.

14. Alex G. Taggart did not intend to exclude adopted children when he executed this trust.

\*   \*   \*   \*   \*   \*

16. I.C. 30–4–2.1–2 and I.C. 30–4–1–4 apply to this trust.

17. I.C. 30–4–2.1–2 can be applied retroactively because it does not adversely affect the rights of a vested beneficiary

---

4. The Appellees do not raise the exclusion of this affidavit as an issue on appeal.

or give a right to any beneficiary which he or she was not intended to have when the Trust was created.

18. Belle Delint–Eaglesfield and Gregory A. Taggart are "surviving children of Henry G. Taggart" along with Bonnie Taggart Paloutzian, Brenda L. Taggart, and Linda M. Taggart.

*Id.* at 7. Bonnie and Linda ("the natural children"), but not their sister Brenda, now appeal the trial court's order.

## Discussion and Decision

The natural children contend that the trial court erred in interpreting the Trust as including the adopted children. Specifically, they argue that the 2003 amendment does not apply retroactively. In making this argument, the natural children do not assert that the retroactive application violates their constitutional rights. *See* Appellants' Br. p. 12.

One of the cardinal principles of trusts and estates law is that the testator or settlor has the right to arrange for the distribution of his estate as he sees fit. Jay M. Zitter, Annotation, *Adopted Child as Within Class Named Deed or Inter Vivos Instrument,* 37 A.L.R.5th 237, § 2(a) (1996). Thus, as a general rule, a person may give a larger percentage to one beneficiary than another, completely ignore a person who society claims is the usual and natural subject of the person's bounty and should by all "rights" receive a portion of the estate, or even give the entire estate to charity and ignore all family members entirely. *Id.*

The interpretation of a trust is a question of law for the court. *Univ. of S. Ind. Found. v. Baker,* 843 N.E.2d 528, 531 (Ind.2006). The primary purpose of the court in construing a trust instrument is to ascertain and give effect to the settlor's intention and carry out this intention unless it is in violation of some positive rule

of law or against public policy. *Id.* at 532; *Malachowski v. Bank One, Indianapolis,* 590 N.E.2d 559, 565 (Ind.1992); *Matter of Walz,* 423 N.E.2d 729, 733 (Ind.Ct.App. 1981); Zitter, 37 A.L.R.5th at § 2(a) ("[I]n the law of trusts it is the intent of the individual settlor that must govern, not the general attitudes of society, and thus if a settlor would specifically provide for an adopted child or descendant to take under a trust instrument, the child should be entitled to receive said share, but the converse is also true and thus a specific exclusion should bar the adopted child from any portion of the estate."). This Court is not "at liberty to rewrite the trust agreement any more than it is at liberty to rewrite contracts." *Malachowski,* 590 N.E.2d at 565–66 (quotation omitted). When a trust instrument must be construed by a court, we attempt to discern the settlor's intent in light of the facts and circumstances existing at the time the instrument was executed. *Id.* at 566.

When Taggart executed the Trust in late November 1953, Henry was unmarried and had no children. In addition, the stranger to the adoption rule was in effect and provided that when one makes provision in his will for a child or children of some person other than himself, he will be presumed *not* to have included an adopted child or children of such other person, unless there is an indication in the will or extraneous circumstances to rebut that presumption. *Lutz,* 758 N.E.2d at 81; *Peirce,* 51 N.E.2d at 482; *see also* 90 C.J.S. *Trusts* § 231 (2002) ("When the instrument is made by one other than the adoptive parent, there is a presumption against the adopted child being entitled to take."). The corollary to that rule was that when one makes provision for his own child or children in his will, he will be deemed to have included an adopted child or children, unless there is something in

the will or extraneous circumstances to rebut that presumption. *Lutz,* 758 N.E.2d at 81. Thus, the stranger to the adoption rule created a rebuttable presumption that a stranger to the adoption did not intend to include adopted children within a designated class. 76 Am. Jur. 2d *Trusts* § 244 (2005).

As background to the stranger to the adoption rule, in 1851 Massachusetts enacted what is generally described as the first modern adoption statute. Naomi Cahn, *Perfect Substitutes or the Real Thing,* 52 Duke L.J. 1077, 1102 (2003). The Massachusetts statute provided that the adopted child should be generally treated as though "he had been born to [his parents] in lawful wedlock; except that he shall not be capable of taking property expressly limited to the heirs of the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation." *Id.* at 1113 (footnote omitted). Many scholars have labeled this statute "as the starting point for the development of modern adoption law." *Id.* at 1112. While this statute became a model for the adoption statutes of several other states, there was enormous regional variation in the approaches taken to adoption. *Id.* at 1113; *see also Keegan v. Geraghty,* 101 Ill. 26, 33 (1881) ("The adoption of one person by another is the creation of an artificial relation between people, and is taken from the Roman law, being unknown to the English law. But a majority of the States of the Union have enacted statutes of adoption. There is not uniformity in such statutes."). "Though some early statutes provided that adopted children would have the same inheritance rights as 'natural children,' other statutes distinguished between the rights of adopted and biological children." Cahn, *supra,* at 1128. For example,

under the stranger-to-the-adoption rule, the adopted child could inherit from her adoptive parents, but not from their relatives. Because they were "strangers" to the adoption process, these relatives were presumed not to have intended for their property to be inherited outside of the bloodline. The early treatises and articles on adoption do not question this precept. It is treated as a well-established exception to the general rule that adoption creates a substitute family relationship. As one court [*Keegan v. Geraghty,* 101 Ill. 26 (1881) ] asked in 1881, in explaining why an adopted child could not inherit from a collateral relative, "[b]ut another person, who has never been a party to any adoption proceeding, who has never desired or requested to have such artificial relation established as to himself, why should his property be subjected to such an unnatural course of descent?" The court labeled the adoptee "an alien in blood."

*Id.* at 1128–29 (footnotes omitted); *see also Keegan,* 101 Ill. at 35–36 ("To have it turned away upon his death from blood relations, where it would be the natural desire to have property go, and pass into the hands of an alien in blood, —to produce such effect, it seems to us, the language of the statute should be most clear and unmistakable, leaving no room for any question whatever. We find in our statute of adoption no express language giving to the adopted child the right to inherit from any one else than the adoptive parents.").

The stranger to the adoption rule has been abrogated by statute in most jurisdictions. *See* George Gleason Bogert et al., *Trusts and Trustees* § 182 n. 36 (2nd ed. 1979). The impetus for this shift was that "[s]ociety ha[d] clearly grown much more accepting of adoptions over the years, to the extent that it is presumed that the vast majority of persons s[aw] no distinction between adopted and biological children."

Jay M. Zitter, Annotation, *Adopted Child as Within Class Named in Testamentary Gift*, 36 A.L.R.5th 395, § 2(a) (1996). There has been a distinct trend, which is reflected in both recent statutes and court decisions, toward treating adopted children in all respects as natural children. Many states have not only abrogated the stranger to the adoption rule but have created the opposite presumption that adopted children are to be included, which can be rebutted only by an express contrary intent in the instrument or an intent clearly implied by the surrounding facts and circumstances. Bogert, *supra*, at § 182.

Our General Assembly abrogated the stranger to adoption rule as it applied to the Probate Code in 1953. Section 6–601 was added to provide the following rule for interpreting a will:

> In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:
>
>   \*    \*    \*    \*    \*    \*
>
> (d) In construing a will making a devise to a person or persons described by relationship to the testator or to another, any person adopted during minority before the death of the testator shall be considered of his adopting parent or parents and not the child of his natural or previous adopting parents....

Ind.Code Ann. § 6–601(d) (Burns 1953). Section 6–601 went into effect on January 1, 1954, a little more than one month after Taggart executed the Trust. Acts 1953, § 2502, p. 417. This subsection, with very minor changes, is now codified at Indiana Code section 29–1–6–1(d):

> (d) In construing a will making a devise to a person or persons described by relationship to the testator or to another, any person adopted prior to the person's twenty-first birthday before the death of the testator shall be considered

the child of the adopting parent or parents and not the child of the natural or previous adopting parents.

Ind.Code Ann. § 29–1–6–1(d) (West 1999); *see also* Ind.Code Ann. § 6–208 (Burns 1953), now codified at Ind.Code Ann. § 29–1–2–8 (West 1999) ("For all purposes of intestate succession, including succession by, through, or from a person, both lineal and collateral, an adopted child shall be treated as a natural child of the child's adopting parents, and the child shall cease to be treated as a child of the natural parents and of any previous adopting parents.").

In *Lutz*, this Court held that these 1953 amendments to the Probate Code "changed" the stranger to the adoption rule as it applies to wills. 758 N.E.2d at 82; *see also Retseck v. Fowler State Bank*, 782 N.E.2d 1022, 1028 (Ind.Ct.App.2003) ("[T]he General Assembly has amended the 'stranger-to-the-adoption' rule by enactment of the 1953 Probate Code."); 14 J. Eric Smithburn et al., *Indiana Practice: Family Law* § 5:1 (2nd ed. 2009) ("[The stranger to the adoption rule] changed with the 1953 Probate Code. That statute provided that a child adopted during his or her minority would generally be treated like a natural child for purposes of inheritance."). When the Probate Code was amended in 1953, effective January 1, 1954, to abrogate the stranger to the adoption rule, there was no accompanying provision making these amendments retroactive. Thus, our appellate courts have held that the stranger to the adoption rule still applies to wills whose testators died before 1954. *See, e.g., Lutz*, 758 N.E.2d at 83.

Although the Probate Code was amended in 1953 to place adopted children on equal footing with natural children when interpreting a will, the Trust Code did not follow suit until nearly a half century later

in 2003. Specifically, Indiana Code section 30–4–2.1–2 was added by Public Law 4–2003, Section 7, effective July 1, 2003, to provide as follows:

> (a) Except as provided in subsection (b), in construing a trust naming as beneficiary a person described by relationship to the settlor or to another, a person adopted before:
>
>> (1) the person is twenty-one (21) years of age; and
>>
>> (2) the death of the settlor;
>
> shall be considered the child of the adopting parent or parents and not the child of the natural or previous adopting parents.

Ind.Code Ann. § 30–4–2.1–2(a) (West 2009).[5] As with the 1953 amendments to the Probate Code, this 2003 amendment to the Trust Code in effect abrogated the stranger to the adoption rule as it applies to trusts and placed adopted children on equal footing with natural children when construing a trust. The amendment shifted the presumption from one favoring the exclusion of adopted children described by relationship to another to a presumption favoring the inclusion of such adopted children.

But, unlike the Probate Code, the Trust Code contains a retroactivity provision.[6] A retroactive provision has been defined as one which "affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute." 73 Am. Jur. 2d *Statutes* § 244 (2001). A retrospective law affects "transactions which occurred or rights which accrued before it became operative and which ascribes to them effects not inherent in their nature in view of the law in force at the time of their occurrence." *Id.* Specifically, the Trust Code at Section 30–4–1–4 provides for retroactivity as follows:

> Except as provided elsewhere in this article, the rules of law contained in this article *shall* apply to all trusts created prior to September 2, 1971 unless to do so would:
>
>> (1) adversely affect a right given to any beneficiary;
>>
>> (2) give a right to any beneficiary which he was not intended to have when the trust was created;
>>
>> (3) impose a duty or liability on any person which was not intended to be imposed when the trust was created; *or*
>>
>> (4) relieve any person from any duty or liability imposed by the terms of the trust or under prior law.

Ind.Code Ann. § 30–4–1–4 (West 2009) (emphases added).[7] The Trust Code

---

5. The adopted children cite a section from *Henry's Indiana Probate Law and Practice* which they argue supports their position that they are indeed beneficiaries under the Trust. *See* Appellees' Br. p. 5–6. However, this section of *Henry's* merely summarizes the 2003 amendment and does not consider the effect of the stranger to the adoption rule on it. *See* 7 Daniel R. Gordon et al., *Henry's Ind. Probate Law & Practice* § 39.42 at 39–219–39–220 (Matthew Bender 2009).

6. For this reason, the cases that the natural children cite, *Peirce* and *Lutz*, which construe *testamentary* trusts under the Probate Code, are not dispositive of the issue presented here.

7. The significance of "September 2, 1971" is that it is the date of promulgation of the 1971 Acts. 2005 Ind. Acts. XXX; *see also id.* at XXVI ("Until 1979, acts not containing an emergency clause or a specific effective date provision became effective upon promulgation, i.e., completion of official distribution of session laws to the clerks of all circuit courts."). Section 30–4–1–4 was first enacted in 1971, *see* Acts 1971, P.L. 416, § 2, almost thirty-two years *before* the 2003 amendment to the Trust Code abrogating the stranger to the adoption rule. It was amended, as reproduced above, by Acts 1982, Public Law 171, Section 117 with an emergency effective date of February 24, 1982.

Study Commission Comments to Section 30–4–1–4 recognize that statutes created after the creation of a trust will be applied retroactively to that trust but caution that statutes may not be applied retroactively if vested rights are affected:

> This article will affect the remedies of the parties and the procedure not only for implementing the remedies but for administering the trust in general as to trusts created prior to the effective date of this code. Under the present law, a statute will not be applied retrospectively unless the plain language of the statute indicates that it was intended to be. *Chadwick v. City of Crawfordsville,* 216 Ind. 399, 24 N.E.2d 937, 129 A.L.R. 469 (1940); *Herrick v. Sayl[e]r,* 245 F.2d 171 (7th Cir.1957). However, the article will not be applied retrospectively if vested rights or obligations will be affected or the retroactive operation would impose new liabilities. *Herrick v. Sayl[e]r, supra; Stewar[t] v. Marson Const. Corp.,* 244 Ind. 134, 191 N.E.2d 320 (1963).

I.C. § 30–4–1–4 (comments).

This Court has previously observed that Section 30–4–1–4 is the "codification of the long standing rule that a statute may not be retroactively applied if such application impairs vested rights." *Hinds v. McNair,* 413 N.E.2d 586, 608 n. 20 (Ind.Ct.App. 1980). A retrospective law may be invalid if it impairs vested rights. 73 Am. Jur. 2d at § 244.

Neither party argues on appeal that the retroactivity statute does not apply to the 2003 amendment abrogating the stranger to the adoption rule. And indeed, we determine that it does. We do so because we presume that when the legislature amended the Trust Code in 2003 to abrogate the stranger to the adoption rule, it was aware that the retroactivity clause applied to all trusts created before September 2, 1971.[8] Accordingly, the 2003 amendment applies to this Trust. A rebuttable presumption exists that Taggart intended to include the adopted children of Henry unless the natural children are able to prove that one of the exceptions delineated in the retroactivity statute applies. *See Mercantile–Safe Deposit & Trust Co. v. Purifoy,* 280 Md. 46, 371 A.2d 650, 657 (1977) (holding that a statute providing for retroactive application of rule that use of "children" in trust includes adopted children "was designed to operate as a legislatively mandated rule of construction to guide the courts in ascertaining th[e settlor's] intention by, in effect, creating a presumption in favor of the inclusion of children adopted after June 1, 1947.").

The natural children argue that not one but two of the exceptions apply, namely that applying the presumption that adopted children are included in the Trust (1) adversely affects a right given to any beneficiary and (2) gives a right to any beneficiary which he or she was not intended to have when the trust was created.

---

**8.** We acknowledge that because Section 30–4–1–4 only applies to trusts created before September 2, 1971, this leaves open the question of whether the stranger to the adoption rule applies to trusts created after that date but before the Trust Code was amended in 2003, leaving trusts executed in an almost thirty-two-year time period in limbo. Because this factual scenario is not presented here, we do not address it. Rather, we ask our legislature to consider closing the gap.

In addition, because the 2003 amendment to the Trust Code has a retroactivity provision, the natural children's reliance on *Ohio Citizens Bank v. Mills,* 45 Ohio St.3d 153, 543 N.E.2d 1206 (1989), which involved a statute without a retroactivity provision, is misplaced. Moreover, the Ohio General Assembly responded to *Mills* by amending the statute to apply retrospectively to any instrument which does not expressly exclude an adopted person. *See Fifth Third Bank v. Crosley,* 79 Ohio Misc.2d 10, 669 N.E.2d 904, 909 (1996).

I.C. § 30–4–1–4. As for the first exception, the natural children assert that "[n]othing could be more clear that the natural children have been adversely impacted than a diminution of their trust interest." Appellants' Reply Br. p. 2. That is, "division of the trust estate by five (5) instead of three (3) would adversely impact the [natural] children." *Id.* at 1. The adopted children respond that the natural children are no more adversely affected by their inclusion than when the natural children's own sibling, Brenda, was born. They posit that this is because the class of beneficiaries is constantly changing until Henry's death, as births or deaths could occur.

■ In determining whether the retroactive application of the 2003 amendment adversely affects a right given to any beneficiary, we apply the amendment, which favors the inclusion of the adopted children, to the Trust when the amendment went into effect on July 1, 2003—and not some other date. The rationale for applying the amendment to the Trust in 2003 is that an inter vivos trust is effective upon execution, unlike a will which is not effective until the testator's death. *See Ickes v. Waters,* 879 N.E.2d 1105, 1109 (Ind.Ct.App.2008), *clarified on reh'g,* 886 N.E.2d 643 (Ind.Ct.App.2008), *trans. denied.* So, for example, had a statutory amendment changed the powers of the Trustee as to how she could manage or invest the corpus of the trust, said amendment would be effective at the time of the amendment. The same applies to the 2003 amendment. Consequently, on the day the amendment favoring inclusion of the adopted children became effective, the adopted children received an interest in the Trust. *See Purifoy,* 371 A.2d at 658 (holding that adopted child's interest in the trust instruments executed between 1911 and 1940 "vested" in 1961 when the statute abrogating the stranger to the adoption rule was made retroactive to pre–1947 instruments and that the interest "vested absolutely" in 1972 when the life estate holder, the adopted child's father, died).

Although the natural children had an interest in the principal and any undistributed income of the Trust at the time the amendment became effective, that interest was not absolutely vested because Henry was still alive. Thus, it was unknown who the "surviving children" of Henry would be upon his death. *Cf. Hinds,* 413 N.E.2d at 608 n. 20 (holding that *named* beneficiaries of an inter vivos trust acquired a vested interest on date trust was created); *see also* 90 C.J.S. *Trusts* § 230 (2002) ("Where, under the provisions of a trust deed, a gift to a class is postponed, either to a particular time or pending the termination of a preceding estate, only those take who are in existence at the arrival of the time for distribution...."). Therefore, the natural children could not have been adversely affected by the retroactive application of the 2003 amendment giving the adopted children an interest in the trust because at that time it was uncertain whether they would be "surviving children" of Henry and/or the share each child was to receive.

■ As to the second exception, the natural children argue that were the adopted children to be considered as surviving children of Henry, they would be given a right which they were not intended to have when the Trust was created. The natural children claim that we must look to Taggart's intent at the time the Trust was created. However, both parties concede that the Trust is silent and no other evidence exists in the record to ascertain Henry's intent to include or exclude adopted children. It is precisely because there is no evidence of intent either way that the presumption controls the outcome.

Thus, the natural children's argument seems to be circular to us. That is, they concede that the retroactive presumption to include adopted children applies, but only if there is evidence that the adopted children were to be included. But if evidence existed that the adopted children were to be included there would be no reason to apply the retroactive presumption.

Instead, we have already determined that the 2003 amendment reversed the presumption established by the stranger to the adoption rule to a presumption favoring the inclusion of adopted children. Therefore, the natural children have the burden of going forward with evidence showing that at the time of the execution of the Trust, Taggart intended to exclude adopted children. This they have not done.[9]

Because the natural children have failed to prove that either of the two exceptions apply, we conclude that the 2003 amendment applies retroactively to the Trust. Thus, we affirm the trial court's ruling that the adopted children are beneficiaries under the terms of the Trust.

Affirmed.

RILEY, J., concurs.

CRONE, J., dissents with separate opinion.

CRONE, Judge, dissenting.

"The polestar for construing trust provisions is the intent of the settlor." *Matter of Walz*, 423 N.E.2d at 733. The relevant intent "is that held by the settlor at the time the trust was executed. This is the basis of the following well established rule of trust construction: the settlor's intent must be determined from the facts and circumstances surrounding the settlor at the time of the execution of the trust." *Id.* at 734. When Taggart executed his irrevocable inter vivos Trust in November 1953, the stranger to the adoption rule was in effect, and we must presume that he was familiar with that rule. *Cf. Rocker v. Metzger*, 171 Ind. 364, 370, 86 N.E. 403, 405 (1908) ("We must presume that the testator in this case made his will with a knowledge of [a longstanding rule regarding the disposition of real estate where a widow elects to take against the will] and in the light of the meaning of the words used therein."). To reiterate, the stranger to the adoption rule states that "when one makes provision in a [document] for a child or children of some person other than himself, he will be presumed not to have included an adopted child or children of such other person, unless there is something in the [document] or in the extraneous circumstances to rebut that presumption." *Peirce*, 222 Ind. at 121, 51 N.E.2d at 482. Here, nothing rebuts the presumption that when Taggart provided for the distribution of the Trust corpus to Henry's "surviving children" upon Henry's death, he intended for the corpus to be distributed only to Henry's surviving *natural* children.

In concluding otherwise, the majority has ignored this presumption, disregarded Taggart's intent, and rewritten the Trust, notwithstanding its acknowledgement that we are not at liberty to do so. *See Malachowski*, 590 N.E.2d at 565–66.[10] Words

---

9. *Walz* illustrates an instance of the type of evidence needed to rebut the presumption. In *Walz*, the beneficiaries were specifically named and as such the non-named adopted child was excluded. 423 N.E.2d at 735–37.

10. In my view, the majority's discussion of the "background" to the stranger to the adoption rule is an apparent attempt to justify its decision on public policy grounds. The majority neglects to mention that even today, public policy does not prohibit a person (in-

used in a legal context have a very specific meaning, and a court's primary task is to recognize and honor that meaning. A court may not change that meaning decades after the fact, which is precisely what the majority has done here. Just as the legislature may not pass a law impairing the obligation of contracts,[11] so must the judiciary refrain from frustrating the expectations of those who dispose of their property by trust, will, or deed.

It is important to note that the purpose of the stranger to the adoption rule was not to discriminate against adopted children, but rather to ensure that a settlor's intent could not be subverted by events outside his or her control—that is, by another person's adoption of one or more children for the purpose of redistributing the trust estate. It is also important to note that we are concerned here with the distribution of a private individual's personal property according to his stated intent, not with the distribution of public funds. In other words, it is not our task to carry out the public policy of the State of Indiana, but rather to carry out Taggart's intent as expressed in the 1953 Trust document. We must presume that Taggart was aware of the implications of the stranger to the adoption rule when he executed the Trust, and we must ensure that the corpus is distributed pursuant to his stated intent.

Unlike the majority, I believe that Taggart's intent is unaffected by the Trust Code's retroactivity provision, which states,

> Except as provided elsewhere in this article, the rules of law contained in this article shall apply to all trusts created

prior to September 2, 1971 unless to do so would:

> (1) adversely affect a right given to any beneficiary;
>
> (2) give a right to any beneficiary which he was not intended to have when the trust was created;
>
> (3) impose a duty or liability on any person which was not intended to be imposed when the trust was created; or
>
> (4) relieve any person from any duty or liability imposed by the terms of the trust or under prior law.

Ind.Code § 30–4–1–4.

The majority states that "[a] rebuttable presumption exists that Taggart intended to include the adopted children of Henry unless the natural children are able to prove that one of the exceptions delineated in the retroactivity statute applies." Op. at 929. This statement confuses the issue and stands the stranger to the adoption rule on its head. As I see it, the issue is simply whether Indiana Code Section 30–4–2.1–2(a) applies retroactively *vis-à-vis* the Trust pursuant to Indiana Code Section 30–4–1–4; the natural children bear the burden of proving that one of the exceptions in Indiana Code Section 30–4–1–4 applies.

In this case, applying Indiana Code Section 30–4–2.1–2(a) retroactively would adversely affect the rights given to the natural children under the Trust, in that it would diminish the amount of their bequests. The majority posits that

> the natural children could not have been adversely affected by the retroactive application of [Indiana Code Section 30–4–2.1–2(a)] giving the adopted children an

cluding a parent, much less a stranger) from favoring natural children over adopted children in a will or trust.

**11.** *See* IND. CONSTITUTION, art. 1, § 24 ("No ex post facto law, or law impairing the obligation of contracts, shall ever be passed.").

interest in the trust because at [the time the Trust Code was amended in 2003] it was uncertain whether they would be "surviving children" of Henry and/or the share each child was to receive.

Op. at 930. The inclusion of any adopted children in 2003 adversely affected the rights of the natural children from that time forward; only the extent of the adverse effect was uncertain until Henry died in 2008. To read the statute otherwise would render Indiana Code Section 30–4–1–4(1) meaningless. On this basis alone, I would hold that Indiana Code Section 30–4–2.1–2(a) may not be applied retroactively and reverse the trial court's order stating that the adopted children are beneficiaries under the Trust.

With respect to the second exception listed in Indiana Code Section 30–4–1–4, I note that the entire class of adopted children, however many, exists as beneficiaries only as a result of the retroactive application of Indiana Code Section 30–4–2.1–2(a). Based on the foregoing, I respectfully dissent.