# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**D. ERIC NEFF**
Crown Point, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT G. BERGER**
Highland, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| AMY JEAN KRISTOFF, )<br>)<br>Appellant-Petitioner, )<br>)<br>vs. )<br>)<br>CENTIER BANK, )<br>)<br>Appellee-Respondent. ) | No. 45A03-1204-TR-186 |

APPEAL FROM THE LAKE CIRCUIT COURT
The Honorable George C. Paras, Judge
The Honorable Jewell Harris, Jr., Probate Commissioner
Cause No. 45C01-1011-TR-10

**February 15, 2013**

**OPINION –FOR PUBLICATION**

**MATHIAS, Judge**

Amy Jean Kristoff ("Amy") appeals the Lake Circuit Court's grant of summary judgment in favor of Centier Bank ("the Bank"), the trustee of the Amy Jean Kristoff Exempt Trust, in Amy's action to modify the terms of a trust established by her late mother.

We affirm.

**Facts and Procedural History**

The essential facts of this case are undisputed. On October 4, 1985, Sally Jean Kristoff ("Sally") executed a trust document establishing a trust known as the Sally Jean Kristoff Trust. The trust document was amended in 1988 to its present form. Sally was the settlor and the initial trustee of the Trust. Sally had two daughters: Amy and Laurie Ann Kristoff ("Laurie"). On May 8, 2000, twelve years after the amendment of the trust document, Sally died, leaving an estate worth approximately $17,000,000.

The trust documents provided that, upon Sally's death, two separate trusts would be created for her daughters, with each trust funded with an amount equal to the then-existing generation skipping tax exemption:[1]

> 6. As of the date of my death, the GST [Generation Skipping Tax] Exempt Share created above shall be divided and allocated per stirpes among my then living descendants, and property so allocated to a descendant of mine shall be retained in trust as a separate exemption trust named for that descendant of mine and any other exemption trusts created under the following provisions of this paragraph shall be held and disposed of as follows:
>
> > (a) The trustee may pay to or apply for the benefit of a beneficiary for whom an exemption trust is named such amounts of the income and principal of the trust as the trustee, in the trustee's sole discretion, from time to time believes desirable and so directs

---

[1] See 26 U.S.C. § 2631.

2

for the comfortable maintenance, health, education and welfare of the beneficiary and his or her dependents.

(b)    If a beneficiary for whom an exemption trust is named dies before the complete distribution of that exemption trust, then on the death of such beneficiary any part or all of the principal of the exemption trust and the accrued or undistributed income thereof shall be distributed to or for the benefit of such one or more persons or organizations in such proportions and subject to such trusts, powers and conditions as such beneficiary may provide and appoint by will specifically referring to this power to appoint, except that no beneficiary shall have the power to appoint an exemption trust to or for the benefit of such beneficiary, his or her estate or the creditors of either.

(c)    On the death of a beneficiary for whom an exemption trust is named, any principal of the exemption trust not effectively disposed of by any other provisions of this paragraph shall be divided and allocated per stirpes among the then living descendants of the beneficiary, if any, otherwise per stirpes among the then living descendants of the nearest lineal ancestor of the beneficiary who also was a descendant of mine and of whom one or more descendants then are living, or, if non, per stirpes among my then living descendants.  Property so allocated to a beneficiary for whom an exemption trust is named shall be added to that exemption trust, and property so allocated to any other beneficiary shall be retained in trust as a separate exemption trust named for him or her and disposed of as provided in this paragraph 6.

Appellant's App. pp. 19-20.  The Bank is currently the trustee of the trusts created by Sally.

Neither of Sally's daughters has had any children.  After the creation of the trust, Amy received regular distributions from the trust upon her request and at the discretion of the trustee.  She admitted, however, that she had never been denied any of her requests.

Amy filed a petition to terminate the trust on November 12, 2010.  In her petition, Amy argued that the purpose of the trust was to benefit Sally's grandchildren, that no such grandchildren existed or would exist, that these circumstances were not foreseen by

3

the settlor, and that the continuing existence of the trust was impractical and wasteful. The Bank subsequently filed a motion for summary judgment on October 3, 2011. After receiving an extension of time, Amy responded to the summary judgment motion on December 1, 2011. A summary judgment hearing was held on January 19, 2012, after which the trial court took the matter under advisement. The trial court issued an order on March 23, 2012, granting summary judgment in favor of the Bank and denying Amy's request to terminate the trust. Amy now appeals.

**Standard of Review**

Our standard for reviewing a trial court's order granting a motion for summary judgment is well settled:

> A trial court should grant a motion for summary judgment only when the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The trial court's grant of a motion for summary judgment comes to us cloaked with a presumption of validity. An appellate court reviewing a trial court summary judgment ruling likewise construes all facts and reasonable inferences in favor of the non-moving party and determines whether the moving party has shown from the designated evidentiary matter that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. But a *de novo* standard of review applies where the dispute is one of law rather than fact. We examine only those materials designated to the trial court on the motion for summary judgment. . . . Although we are not bound by the trial court's findings and conclusions, they aid our review by providing reasons for the trial court's decision. We must affirm the trial court's entry of summary judgment if it can be sustained on any theory or basis in the record.

Altevogt v. Brand, 963 N.E.2d 1146, 1150 (Ind. Ct. App. 2012) (citations omitted).

4

## Discussion and Decision

Amy first contends that the trial court erred in granting summary judgment in favor of the Bank because there was a genuine issue of material fact regarding whether the Bank was the trustee of the generation-skipping tax exempt trust, or of a primary trust that was also created by Sally for the benefit of Amy.

We note, however, that Amy's own petition to terminate the trust claimed that the Bank was trustee of the "Amy Jean Kristoff Exempt Trust[.]" Appellant's App. p. 14. Amy's response in opposition to the Bank's motion for summary judgment similarly noted that "the trust at issue" in this case was "the Amy Jean Kristoff Exempt Trust[.]" Id. at 96. In fact, at no point before the trial court did Amy claim that another trust was at issue or that the Bank was not the trustee. This issue cannot be presented on appeal for the first time. See T.S. v. Logansport State Hosp., 959 N.E.2d 855, 857 (Ind. Ct. App. 2011) (noting that a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court and the corresponding rule that an argument or issue not presented to the trial court is generally waived for appellate review).[2]

Amy next argues that the primary purpose of the trust was to escape or minimize the consequences of the generation-skipping tax, and that because neither she nor her

---

[2] Even if this issue were not waived, it would appear to be invited error on Amy's part, as she is the party who claimed that the Bank was the trustee of the exemption trust in her initial petition. See Beeching v. Levee, 764 N.E.2d 669, 674 (Ind. Ct. App. 2002) (noting that error invited by the complaining party is not subject to review by this court).

5

sister have, or will ever have, any children, the purpose of the trust has been defeated or substantially impaired by circumstances that were unforeseen by her mother.

The interpretation of a trust document is a question of law for the court. Paloutzian v. Taggart, 931 N.E.2d 921, 925 (Ind. Ct. App. 2010). The primary purpose of the court in construing a trust instrument is to ascertain and give effect to the settlor's intention. Univ. of S. Ind. Found. v. Baker, 843 N.E.2d 528, 532 (Ind. 2006). "Indiana follows 'the four corners rule' that 'extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction.'" Id. (quoting Hauck v. Second Nat'l Bank of Richmond, 153 Ind. App. 245, 260, 286 N.E.2d 852, 861 (1972)). Thus, if a trust document is capable of clear and unambiguous construction, we must give effect to the trust's clear meaning without resort to extrinsic evidence. Id. We are not at liberty to rewrite the trust agreement. Paloutzian, 931 N.E.2d at 925.

In support of her position, Amy cites to Indiana Code section 30-4-3-26(a), which provides in relevant part:

> Upon petition by the trustee or a beneficiary, *the court shall direct or permit the trustee to deviate from a term of the trust if, owing to circumstances not known to the settlor and not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purposes of the trust*. In that case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust, or may prohibit the trustee from performing acts required by the terms of the trust.

(emphasis added).

The first part of Amy's argument is that the purpose of the trust was to provide for Sally's potential grandchildren while avoiding the consequences of the generation-skipping tax. We are unable to agree. While certainly tax-avoidance was part of the purpose of the trust, the plain language of the Paragraph 6(a) of the trust document indicates that the main purpose of the trust was to provide for the "comfortable maintenance, health, education and welfare of the beneficiary and his or her dependents." Appellant's App. p. 20. The trustee was granted sole discretion regarding the distribution of both the principal and the income of the trust to accomplish this goal. Id. Indeed, there is nothing in this language to prevent the trustee from distributing to the beneficiary the entire principal and income of the trust—leaving nothing for any potential children of the beneficiary—if the trustee determined that such was required to accomplish the purpose of the trust.

Paragraph 6(b) provides that if the trust beneficiary, i.e. Amy, dies before the complete distribution of the trust, then the remaining funds are to be distributed as the beneficiary may provide and appoint by will, with the exception that "no beneficiary shall have the power to appoint an exemption trust to or for the benefit of such beneficiary, his or her estate or the creditors of either." Id. Thus, the trust document again anticipates that all of the assets of the trust might be distributed before the death of the beneficiary, leaving nothing for any children of the beneficiary. If, however, the beneficiary dies before the distribution of all of the trust's assets, the beneficiary has the power of appointment to distribute the remaining assets. And there is nothing that requires the beneficiary to distribute the remaining assets of the trust to her children upon her death.

Paragraph 6(c) provides that if the beneficiary dies before the distribution of the assets of the trust and the beneficiary has not exercised the power of appointment to distribute the remaining assets of the trust, only then will the principal of the trust be distributed "per stirpes among the then living descendants of the beneficiary, *if any*, otherwise per stirpes among the then living descendants of the nearest lineal ancestor of the beneficiary who also was a descendant of mine and of whom one or more descendants then are living, or, if not, per stirpes among my then living descendants." Id. (emphasis added). That is, distribution of the assets of the trust to Sally's grandchildren is possible under the trust document, but it is in no way required.

Thus, the trust document first anticipates that the entire assets of the trust might be distributed during the life of the beneficiary. If not, the trust documents provides that the beneficiary has a power of appointment to distribute the remaining assets on her death. If this option is not exercised, only then does the trust document call for the distribution of the trust assets to the beneficiary's descendants *if any*. Given this clear and unambiguous language, we reject the premise of Amy's argument that the purpose of the trust was to provide for Sally's non-existent grandchildren. Nor will we consider any extrinsic evidence because the language of the trust document is not ambiguous.

Nor can we agree with Amy that her and her sister's lack of children was an unforeseen circumstance. Amy and her sister had no children at the time of the execution of the trust document and still had no children twelve years later at the time of their mother's death. Thus, Sally could have very well foreseen that she would have no grandchildren. But more importantly, the language of the trust document itself

8

anticipates that the beneficiaries might have no children even at the time of their death. As noted in the paragraph above, if the trust assets are not exhausted when the beneficiary dies, and the beneficiary fails to exercise her power of appointment, the trust principal is to be "distributed per stirpes among the then living descendants of the beneficiary, *if any*[.]" Appellant's App. p. 20 (emphasis added). It is therefore clear that Amy's failure to have children was not unanticipated.

Amy also refers to Indiana Code section 30-4-3-24.4(a), which provides in relevant part:

> The court may modify the administrative or dispositive terms of a trust if, *because of circumstances not anticipated by the settlor*, modification or termination will further the purposes of the trust. To the extent practicable, the modification must be made in accordance with the settlor's probable intention.

(emphasis added). But again, this section requires the existence of circumstances not anticipated by the settlor, and we have already concluded that the trust document itself anticipates the beneficiaries not having children. This section is therefore inapplicable.

The terms of the trust document are clear and unambiguous, and the primary purpose of the trust was not for the benefit of the beneficiaries' children. Nor was the beneficiaries' failure to have children an unforeseen circumstance. Amy has identified no genuine issue of material fact, and the Bank has demonstrated that it is entitled to judgment as a matter of law.

Affirmed.

KIRSCH, J., and CRONE, J., concur.