**FILED**

Apr 08 2020, 7:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Eric J. Benner
Laurie D. Johnson
Boje Benner Becker Markovich &
Hixson LLP
Noblesville, Indiana

ATTORNEYS FOR APPELLEES

Christopher D. Lee
Ronald G. Salatich
James A. Carter
Wooden McLaughlin LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Raquel Walters,

*Appellant,*

v.

Brittany M. Corder, Matthew T. O'Brien, and Molly L. O'Brien,

*Appellees.*

April 8, 2020

Court of Appeals Case No.
19A-TR-1069

Appeal from the Marion Superior Court

The Honorable Steven R. Eichholtz, Judge

Trial Court Cause No.
49D08-1805-TR-19653

**Sharpnack, Senior Judge.**

## Statement of the Case

[1] Raquel Walters, a natural child of David Walters, appeals the trial court's entry of summary judgment that Brittany M. Corder, Matthew T. O'Brien, and Molly L. O'Brien ("O'Brien Children"), who are also natural children of David Walters but who were adopted out of the Walters family, are beneficiaries

under two trusts established by Mildred Goodman, their great grandmother. On this issue of first impression, we hold that under these facts where the children were adopted out of the family after the settlor's death, the adopted out children retained their status as beneficiaries of Mildred. We therefore affirm the trial court.

## Issue

Raquel presents two issues for our review, which we restate as one: whether the trial court erred in granting summary judgment based upon its determination that the beneficiaries of both an irrevocable trust and a testamentary trust included children who had been adopted out of the settlor's family.

## Facts and Procedural History

Mildred Goodman had a son, Charles Walters, who married Ann. In 1968, Mildred established a trust (the Irrevocable Trust) for Charles. The Irrevocable Trust provides that trust income goes to Charles and then, upon Charles' death, to his wife, Ann. At Ann's death, the trust property is to be distributed "to the issue of Charles [ ] per stirpes." Appellant's App. Vol. 2, p. 37, ¶ 2.

In 1960, Charles and Ann had a son, David. David married Joan, and they had three children: Brittany (1990), Matthew (1992), and Molly (1994).

In 1991, Mildred executed a will that created a trust for David (the Testamentary Trust). The Testamentary Trust provides that trust income goes

to David and, on his death, the trust property passes to "his then living children, share and share alike." *Id.* at 22, ¶ 6. Mildred died in 1994.

[6] David and Joan divorced in 1995. David married Michele, and they had a daughter, Raquel, in 1996. Joan married Thomas O'Brien. In 1996, Thomas adopted Joan and David's three children, Brittany, Matthew, and Molly.

[7] David died in 2017. Thereafter, the trustee of the two trusts petitioned the probate court for instructions regarding the interpretation of the trusts as to whether the O'Brien Children should be included in the beneficiary classes as the "then living children" of David under the Testamentary Trust and as the "issue of Charles" under the Irrevocable Trust. The O'Brien Children and Raquel filed claims and counterclaims. Each filed a motion for summary judgment. The probate court entered summary judgment for the O'Brien Children and against Raquel as follows:

> It is hereby declared and determined that Brittany M. Corder, Matthew T. O'Brien, Molly L. O'Brien and Raquel Walters are determined to be the "then living children" of David Walters at the time of his death solely for the purpose of determining the beneficiaries of the Testamentary Trust of Mildred W. Goodman created pursuant to the Last Will and Testament of Mildred W. Goodman on July 9, 1991; and

> It is hereby declared and determined that Brittany M. Corder, Matthew T. O'Brien[,] Molly L. O'Brien and Raquel Walters are considered the children of David Walters solely for the purpose of determining the beneficiaries and class of issue of Charles Henry Walters and David Walters in the Irrevocable Trust of Mildred W. Goodman created on August 8, 1968[.]

Appealed Order, pp. 2-3. It is from this order that Raquel appeals.

# Discussion and Decision

[8] The trial court's grant of summary judgment is presumed valid, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Consumer Attorney Servs., P.A. v. State*, 71 N.E.3d 362, 364 (Ind. 2017). On appeal, we apply the same standard of review as the trial court: summary judgment is appropriate only where the designated evidentiary matter shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Young v. Hood's Gardens, Inc.*, 24 N.E.3d 421, 423-24 (Ind. 2015); *see also* Ind. Trial Rule 56(C). Appellate review is limited to those materials specifically designated to the trial court, and all facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Sheehan Const. Co., Inc. v. Cont'l Cas. Co.*, 938 N.E.2d 685, 688 (Ind. 2010).

[9] The issue in this case arose due to David's death in 2017. Mildred's will created a trust for her grandsons, David and his brother, and provided:

> Upon the death of either of my grandsons, the Trustee shall distribute the then remaining principal and undistributed income of such grandchild's trust share *to his then living children, share and share alike*, or if such deceased grandchild shall leave no surviving child or children, then the share to which such deceased grandchild would have been entitled shall be added to the share of my other grandchild, or if my other grandchild is not then living, the then surviving children of such deceased grandchild

> shall take the share their parent would have been entitled, share and share alike.

Appellant's App. Vol. 2, p. 22, ¶ 6 (emphasis added).

[10] In 1968, Mildred executed the Irrevocable Trust. The provision at issue within that trust provides:

> Upon the death of [Ann], in the event that she survives her husband and qualifies as set out above, or upon the death of Charles Henry Walters in the event he survives her, all of the trust estate shall forthwith be distributed *to the issue of Charles Henry Walters per stirpes* and not per capita, provided that each and all of said issue shall have attained the age of twenty-one (21) years.

*Id.* at 37, ¶ 2 (emphasis added). At the time of the hearing on the parties' motions for summary judgment, Ann was still living. However, the trustee included the Irrevocable Trust in its request for instructions from the court as to the interpretation of Mildred's trust agreements because, upon Ann's passing, the trustee will again face the question concerning the inclusion of the O'Brien Children as beneficiaries.

[11] Raquel first asserts and summarily concludes that she is the only member of the class of beneficiaries described in Mildred's Testamentary Trust as the "then living children" of David because of the adoption out of the O'Brien Children. However, at the time of David's death, all four of his biological children were living. Raquel's argument begs the question at the heart of this appeal: are the O'Brien Children David's "children" within the terms of Mildred's trust?

[12] The interpretation of trusts is a question of law for the court. *Fulp v. Gilliland*, 998 N.E.2d 204, 207 (Ind. 2013). The terms of a trust are "the manifestation of the intent of a settlor" with respect to the trust. Ind. Code § 30-4-1-2(22) (2019). Thus, the primary goal in construing a trust document is to ascertain and give effect to the intent of the settlor. *Fulp*, 998 N.E.2d at 207. This guiding principle has been codified in our trust code, which provides: "The rules of law contained in this article shall be interpreted and applied to the terms of the trust so as to implement the intent of the settlor and the purposes of the trust. If the rules of law and the terms of the trust conflict, the terms of the trust shall control unless the rules of law clearly prohibit or restrict the article which the terms of the trust purport to authorize." Ind. Code § 30-4-1-3. This Court is not permitted to rewrite a trust agreement any more than it is permitted to rewrite a contract. *Malachowski v. Bank One, Indianapolis*, 590 N.E.2d 559, 565-66 (Ind. 1992). Nevertheless, when a court must construe a trust instrument, the well-established rule of trust construction is that the settlor's intent must be determined from the language of the trust instrument and the facts and circumstances existing at the time the trust was formed. *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 533 (Ind. 2006).

[13] We begin with the language that created the trust. Upon David's death, his share of the trust is to be divided among his living children. The term "children" is not defined in the terms of the trust, and the term is not qualified or restricted in any way (other than requiring the children to be "living"). Further, the trust language is silent as to adopted children—whether adopted in

or out of the family. At the time Mildred included in her will the Testamentary Trust in 1991, the Indiana Trust Code did not define the term "children."[1] Further, caselaw indicates that the ordinary, popular, and legal sense of the word "children" embraces the first generation of offspring. *Casper v. Helvie*, 83 Ind. App. 166, 146 N.E. 123, 127 (1925). All four of David's offspring were living at the time of his death.

[14] We now turn to the circumstances existing at the time Mildred executed her will establishing the Testamentary Trust in 1991. David was married to his first wife, Joan, and they had only one child, Brittany. During the course of their marriage, and while Mildred was alive, David and Joan had their second child, Matthew, in 1992. When Mildred died in 1994, David and Joan were still married, and Joan was pregnant with their third child, Molly. Moreover, the unrefuted designated evidence shows that, prior to her death, Mildred knew that Joan was pregnant with a third child, and that Mildred had a close relationship with both Brittany and Matthew during her lifetime. Mildred never knew that David and Joan got divorced or that David consented to the adoption of Brittany, Matthew, and Molly; these events all occurred after Mildred's death.

---

[1] Interestingly, it was not until July 1, 2019, that the Trust Code was amended to include the definition of "child." *See* Ind. Code § 30-4-1-2(7) (defining "child" as "an adopted child or a child that is in gestation before the death of a deceased parent and born within forty-three (43) weeks after the death of that parent. The term does not include a grandchild or other more remote descendants, nor, except as provided in IC 29-1-2-7, a child born out of wedlock").

[15] As we did with her Testamentary Trust, we examine Mildred's intent with regard to the Irrevocable Trust. The term "issue" is not defined by the terms of the trust, and, other than requiring the issue to be twenty-one, the language of this provision does not restrict or limit the term or create a separate class for adopted children. The document is silent with regard to issue that may be adopted in or out of the family. The term "issue" is not defined in the trust code, but it has been defined in caselaw as meaning "descendants." *Allen v. Craft*, 109 Ind. 476, 9 N.E. 919, 922 (1887); *see also* Black's Law Dictionary (11th ed. 2019) (defining "issue" as lineal descendants; offspring). Here, David was a descendant of Charles, and Brittany, Matthew, Molly, and Raquel are all descendants or offspring of David.

[16] As to the facts and circumstances existing at the time Mildred established this trust in 1968, we have little information. David was only eight years old so Mildred had no knowledge of whether he would marry and/or have children. Beyond that information, there is no evidence that Mildred intended to exclude any of her descendants from this class of beneficiaries.

[17] Rather than focusing on the settlor's intent and the circumstances at the time she executed the trust documents, Raquel concentrates on the situation that occurred after Mildred's death. Particularly, she claims that the O'Brien Children cannot be in the class of beneficiaries of either trust because their familial ties to the Walters family were severed due to their adoption out of the family. In support of this argument, she cites Indiana Code section 31-19-15-1

(2009), which is entitled "Effect upon duties, obligations and rights of biological parents," and which provides, in pertinent part:

> (a) [I]f the biological parents of an adopted person are alive, the biological parents are:
>
> > (1) relieved of all legal duties and obligations to the adopted child; and
>
> > (2) divested of all rights with respect to the child;
>
> and the parent-child relationship is terminated after the adoption unless the parent-child relationship was terminated by an earlier court action, operation of law, or otherwise.
>
> (b) The obligation to support the adopted person continues until the entry of the adoption decree. The entry of the adoption decree does not extinguish the obligation to pay past due child support owed for the adopted person before the entry of the adoption decree.

[18] The purpose of Section 31-19-15-1 "'is to shield the adoptive family from unnecessary instability and uncertainty arising from unwanted intrusions by the child's biological family.'" *In re Adoption of J.T.A.*, 988 N.E.2d 1250, 1253 (Ind. Ct. App. 2013) (quoting *In re Adoption of K.S.P.*, 804 N.E.2d 1253, 1257 (Ind. Ct. App. 2004)), *trans. denied*. Here, the O'Brien Children are all adults, and the biological family is not trying to interfere with any aspect of the relationship between them and their adoptive family. Rather, their biological great

grandmother, with whom two of the three O'Brien Children[2] had contact and a relationship from their birth until her death, included them as beneficiaries of her trusts. Although Raquel claims that a determination that the O'Brien Children are beneficiaries under the terms of Mildred's trusts would "undermine the purpose of the adoption statutes," we disagree. Appellant's Br. p. 20. The objective of Section 31-19-15-1 is not advanced by depriving the O'Brien Children of their status as beneficiaries merely because their biological father consented for them to be adopted after the death of the settlor of the trusts. The statute was designed as a shield to protect new adoptive families, not as a sword to prohibit adopted children from receiving a trust distribution, per the settlor's wishes, from a member of the family from which the children have been adopted out. Indeed, allowing this statute to be used in such a manner would contravene one of the cardinal principles of trust law: the settlor has the right to arrange for the distribution of her estate as she sees fit. *Paloutzian v. Taggart*, 931 N.E.2d 921, 925 (Ind. Ct. App. 2010) (citing Jay M. Zitter, Annotation, *Adopted Child as Within Class Named Deed or Inter Vivos Instrument*, 37 A.L.R.5th 237, § 2(a) (1996)).

[19] Raquel also cites to Indiana Code section 30-4-2.1-2 (2003), which provides, in pertinent part:

---

[2] At the time of Mildred's death, Molly had not yet been born. Joan was pregnant with Molly when Mildred died.

(a) [I]n construing a trust naming as beneficiary a person described by relationship to the settlor or to another, a person adopted before:

(1) the person is twenty-one (21) years of age; and

(2) the death of the settlor;

shall be considered the child of the adopting parent or parents and not the child of the natural or previous adopting parents.

However, this statute does not apply in this case for two reasons. First, the statute requires the adoption to occur *prior to* the death of the settlor, and the O'Brien Children were adopted *after* the death of Mildred.[3] Second, this statute was enacted in order to abrogate an antiquated rule known as the "stranger-to-the-adoption rule"[4] concerning children adopted *into* a family. The O'Brien Children, on the other hand, were adopted *out* of the family.

[20] In addition, Raquel contends that to conclude that the O'Brien Children are beneficiaries conflicts with both Indiana Code section 29-1-2-8 (1987) of the probate code and Section 6-4.1-1-3 (2012) of the tax code. Section 29-1-2-8

---

[3] Even if we were to find that Indiana Code section 30-4-2.1-2(a) did apply to the instant matter in construing Mildred's trusts, the statute would not require the O'Brien Children to be considered the children of the adopting parents rather than the children of the natural parents, given the fact that Mildred died before the O'Brien Children were adopted.

[4] Under the stranger-to-the-adoption rule, the adopted child could inherit from or be considered a beneficiary of a trust of his or her adoptive parents but not from the relatives of the adoptive parents. *Paloutzian*, 931 N.E.2d at 926. Because they were "strangers" to the adoption process, these relatives were presumed not to have intended for their property to be inherited or distributed outside of the bloodline. *Id.*

provides that, for purposes of intestate succession, an adopted child will be treated as a natural child of the child's adopting parents and will cease to be treated as a child of the natural parents. Section 6-4.1-1-3 states that, for purposes of inheritance taxes, a legally adopted child is to be treated as if the child were the natural child of the child's adopting parent if the adoption occurred before the individual was totally emancipated. These statutes apply only to intestate distributions and inheritance taxes, respectively, and do not constitute rules of trust construction. For that reason, they are of no significance in ascertaining the intention of a settlor in designating his or her intended beneficiaries when the children were adopted out of the family after the death of the settlor. Stated another way, the question we are presented with is not whether the O'Brien Children would take as heirs if Mildred had died intestate or what class of transferee they are in for purposes of calculating inheritance tax due. Rather, the question is whether Mildred intended to include the O'Brien Children in the classes of beneficiaries when she used the term "children" in her Testamentary Trust and when she used the term "issue per stirpes" in her Irrevocable Trust.

[21] Finally, Raquel opines that to allow the O'Brien Children to be considered beneficiaries under Mildred's trusts "creates dangerous precedent that opens the doors to allow adoption decrees to be undone in similar cases in which adopted out children seek to come in and claim to be beneficiaries within a class of issue under a trust created by their biological family." Appellant's Br. p. 25. We disagree. Nothing about our decision in this case creates a means for this or

any other adoption decree to be invalidated. We are not dealing with the O'Brien Children's adoption decree and our decision certainly does nothing to invalidate that decree. Rather, we are ascertaining and giving effect to the intent of the settlor (i.e., Mildred). Furthermore, the notion that our decision opens the door to allow adopted out children to come into court and randomly claim to be members of a class of beneficiaries is far-fetched. There must be a basis for any such claim, and, as is the case here, the claims would be determined according to the terms of the trust document and the intent of the settlor.

[22] The courts of our state have made it abundantly clear that the settlor's intent is the sovereign guide in the interpretation of the terms of a trust. *See, e.g.*, *Doll v. Post*, 132 N.E.3d 34, 38 (Ind. Ct. App. 2019) (primary purpose in construing trust is to ascertain and give effect to settlor's intention), *trans. denied* (2020). We have before us no evidence of an intent on the part of Mildred to exclude her three eldest grandchildren from membership in the classes of beneficiaries of these two trusts merely because her grandson gave his consent to their adoption by their stepfather after Mildred's death. Therefore, we determine that, despite the fact that the O'Brien Children were adopted out of the Walters family, they retain their status as beneficiaries in the two trusts as the "children" of David and the "issue" of David's father.

# Conclusion

[23] Accordingly, absent any evidence in the trusts or in the surrounding circumstances of an intent to exclude the O'Brien Children because of an unanticipated adoption, we affirm the trial court's entry of summary judgment in favor of the O'Brien Children.

[24] Affirmed.

Bradford, C.J., and Tavitas, J., concur.